DANCIGER et al. v. STONE et al.

(Circuit Court, E. D. Oklahoma. November 22, 1909.)

No. 1,016.

**1. COMMERCE (§ 60*)—INTERSTATE COMMERCE—LIQUORS—STATE STATUTES.**

Snyder's Comp. Laws Oklahoma 1909, § 4180, making it unlawful for any person to manufacture, sell, give away, or otherwise furnish, except as provided in the act, any intoxicating liquors or imitation thereof or substitute therefor, or to ship or in any way convey such liquor, etc., and Sess. Laws Okl. 1907–08, p. 605, c. 69, art. 3, §§ 5, 6, providing for search and seizure of liquors within the state, has no application to liquors transported in interstate commerce into the state while remaining in the hands of the carrier for delivery to bona fide consignees on shipments with draft attached to the bill of lading, etc.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 60.*]

**2. COURTS (§ 508*)—INJUNCTION—FEDERAL COURTS—JURISDICTION—STATE OFFICERS.**

Since Sess. Laws Oklahoma 1907–08, p. 605, c. 69, art. 3, §§ 5, 6, providing for the search and seizure of intoxicating liquors unlawfully held and handled within the state, does not apply to liquors transported into the state in interstate commerce while remaining in the hands of the carrier and before delivery to the consignee, officers seizing such liquors are not protected by such act, and hence a federal injunction restraining the enforcement of the search and seizure warrants by such officers as to such liquors was not a violation of Rev. St. § 720 (U. S. Comp. St. 1901, p. 581), providing that injunction shall not be granted by any United States court to stay proceedings in any court of the state except when authorized by law relating to bankruptcy proceedings.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1418–1430; Dec. Dig. § 508.*

Enjoining proceedings in state courts, see note to Garner v. Second Nat. Bank, 16 C. C. A. 90; Central Trust Co. v. Grantham, 27 C. C. A. 575; Board of Com'rs v. Travelers' Ins. Co., 63 C. C. A. 473.]

**3. EQUITY (§ 65*)—MAXIM—"CLEAN HANDS."**

The maxim, "He who comes into equity must come with clean hands," expresses rather a principal of inaction than of action, and means that equity refuses to lend its aid to one seeking its active interposition who has been guilty of unlawful or inequitable conduct in the matter in relation to which he seeks relief.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 185–187; Dec. Dig. § 65.*

For other definitions, see Words and Phrases, vol. 2, p. 1219.]

**4. EQUITY (§ 65*)—INJUNCTION—"CLEAN HANDS."**

Snyder's Comp. Laws Oklahoma 1909, § 4180, makes it unlawful for any person to manufacture or sell intoxicating liquors or to ship or in any way convey such liquor from one place within the state to another place therein, except the conveyance of a lawful authorized purchase or to solicit the purchase or sale of any such liquors, either in person or by sign, circular letter, card, price list, advertisement, or otherwise, or to distribute, publish, or display any advertisement, sign or notice where any such liquor may be manufactured, bartered, sold, given away, or otherwise furnish or have possession of any such liquor with intention of violating the provisions of the act. Such act was passed pursuant to a constitutional provision in accordance with the enabling act under which the state was admitted, requiring that the manufacture and sale, giving away, or otherwise furnishing, except as provided, of intoxicating liquors within parts of the state, which had previously constituted Indian reservations, should be prohibited for 21 years and until the people shall otherwise pro-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

vide by amendment to the Constitution or proper state legislation. *Held* that, since such act prohibited the advertising or soliciting within the state the sale of intoxicating liquors, whether manufactured therein or not, a nonresident liquor dealer obtaining orders for liquor in Oklahoma by means of advertisements sent through the mails to prospective purchasers within the state violated the law, and hence did not come into equity with clean hands so as to entitle him to an injunction restraining the state officers from executing search and seizure warrants with reference to liquor shipped into the state to customers obtained pursuant to such method on the theory that the liquors constituted interstate commerce.

[Ed. Note.—For other cases, see Equity, Dec. Dig. § 65.*]

In Equity. Suit by Dan Danciger and others against S. W. Stone and others. Application for temporary injunction denied, and restraining orders dissolved.

E. H. Busiek, for complainants.
Fred S. Caldwell, for respondents.

CAMPBELL, District Judge. On April 30, 1909, complainants filed their bill in this court against the superintendent of the state agency, James King, sheriff of Hughes county, Okl., Attie Roberts, chief of police of Holdenville, Hughes county, Okl., the sheriff of Choctaw county, Okl., and the sheriff of McClain county, Okl., in which it appears that the complainants are nonresidents of this state, that the defendants are residents of the state, and that the amount in controversy exceeds the sum of $2,000, exclusive of interest and costs. They allege that they are shippers of liquor, having their principal place of business in Kansas City, Mo., and having customers residing in various states, including Oklahoma; that by the use of the United States mail they send out advertising matter and circulars, and receive from citizens of Oklahoma orders of alcoholic liquors, to be sent them by freight, the price to be paid after arrival of the goods, the method being what is known as "shipper's order," or "sight draft with bill of lading attached"; that all liquors shipped are shipped under bona fide orders received by them in Kansas City from customers in Oklahoma. The bill further alleges:

"That complainants do not make shipments into the state of Oklahoma in order that the same should be there unlawfully sold, or given away, nor were the liquors by the complainants or by any agents of the complainants kept in the state of Oklahoma, or kept at any point in said state for the purpose of selling the same or giving the same away. In the event that the consignee does not pay the draft sent to the bank, and take up the bill of lading, for his shipment, the goods as directed by the bill of lading are ordered returned to Kansas City, and in no case is any shipment sent out to one person there allowed to be turned over or delivered to any other person. All bills of lading contain the instructions to return in 10 days if not delivered."

They further allege that the defendants, in excess of their authority as officers of the law, have wrongfully seized from the depots at various points named within the Eastern district of Oklahoma certain shipments of liquor while the same were in the hands of the carrier and before delivery to the consignee, the same being plainly marked with the name of the consignee. It is further alleged:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"Complainants further state that they have in the past suffered harassment, great loss, and inconvenience by reason of the fact that public officers in the Eastern district of Oklahoma, who are not learned in the law, have, in excess of their authority as officers, seized goods consigned by these complainants while still in the hands of the carrier and still articles of interstate commerce; that they are still constantly subjected to such interference despite the fact that they have sent to all sheriffs and public officers copies of the rulings of courts of competent jurisdiction in regard to the illegality of such seizures; that their business is being seriously injured by reason of delays in delivery due to the above cause and threats of seizure by said officers.

"Complainants further show that the defendants and each of them are threatening to continue, and unless restrained by an order of this honorable court, will continue, to advise, instruct, direct, aid, and abet in making, and will make seizures of said liquors while in the hands of the carriers, shipped by the complainants into the state of Oklahoma by the 'shipper's order,' 'order notify,' or 'sight draft and bill of lading' method, as above described, and will continue advising and making seizures of such liquors when in the opinion of the officers such liquors so shipped are not intended for the personal use of the consignee, or in their opinion the consignee expects to sell same. * * *

"Complainants further show that, unless said defendants be restrained by an order of this court as hereinafter more fully prayed for, an irreparable injury will be inflicted upon the business of complainants in carrying on interstate commerce under the protection of the United States Constitution as shown above, and for which action at law will furnish no adequate relief and an attempted resort to an action at law would result in a multiplicity of suits and vexatious and expensive litigation."

Complainants pray that defendants shall be required to restore liquors already seized, and enjoined from making further seizures, and for leave to supplement this proceeding from time to time, to bring in other persons who shall unlawfully seize goods so consigned by complainants.

Restraining orders were issued and time set for hearing upon motion for temporary injunction, of which notice was given the defendants. At the hearing upon the temporary injunction on May 15th last, the defendant Stone appeared, and having answered, and complainants not desiring to further proceed against him, the restraining order as to him was dissolved. The defendants King, Roberts, sheriff of McClain county, and sheriff of Choctaw county, appeared neither in person nor by counsel. As to them, the order of temporary injunction was entered, also granting leave to complainants to apply to the court from time to time to make parties defendant hereto other public officers in the Eastern district of Oklahoma, who shall seize or interfere with goods consigned by complainants herein while still in the hands of the carrier. By supplemental bills filed on October 16th and 26th the following persons were made parties to this proceeding, restraining orders issued against them, and the hearing for temporary injunction set for November 1st, to wit: Sheriff of Bryan county, the chief of police of Vinita, Craig county, the chief of police of Tahlequah, Cherokee county, sheriff of Tulsa county, the sheriff of Murray county, the sheriff of Stephens county, and the sheriff of Pontotoc county. At the hearing on the temporary injunction as to the defendants in the supplemental bills, they appeared by their attorney, Fred S. Caldwell, and the following stipulation of counsel was entered into, as to the facts in this case, to wit:

"That all seizures referred to in complainants' bill and about which com-plainants are complaining were made under and pursuant to search and sei-zure warrants issued out of the state courts of competent jurisdiction under and pursuant to the provisions of sections 5 and 6, article 3, of chapter 69 of the Session Laws of 1907 and 1908 of the state of Oklahoma. And it is fur-ther stipulated and agreed that the relief which the complainants herein are seeking is that the defendants herein be enjoined from executing such search and seizure warrants so issued by said state courts under and pursuant to sections 5 and 6, article 3, of said chapter 69 of the Session Laws of 1907 and 1908 of the state of Oklahoma, and prosecuting the same, in all cases where the execution of such search and seizure warrants necessitates the taking and seizing of intoxicating liquors shipped into the state of Oklahoma by the com-plainants herein through interstate commerce, where such interstate ship-ments of intoxicating liquors are in the hands of the interstate carrier and prior to the delivery thereof by the interstate carrier to the consignee at the point of destination in the state of Oklahoma under the terms and provisions of the contract of interstate shipment."

Two principal grounds are urged by the defendants now before the court why the temporary injunction should not issue: First, that it is in effect enjoining a state court contrary to section 720, Rev. St. (U. S. Comp. St. 1901, p. 581); and, second, that, as the complainants allege in their bill that the orders are secured by circulars and adver-tisements sent into Oklahoma, it therefore appears that they are vio-lating the laws of the state, and hence do not come into this court of equity with clean hands. Section 720, Rev. St., is as follows:

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by a law relating to proceedings in bank-ruptcy."

Sections 5, 6, art. 3, c. 69, p. 605, Sess. Laws Okl. 1907–08, referred to in the stipulation, provide that any judge of the district or county court or justice of the peace, upon showing of probable cause, may is-sue search and seizure warrants directed to any officer of the county to seize liquors under certain circumstances therein mentioned, pro-vide for hearing as to whether such liquors are being unlawfully held and handled, etc., and by the stipulation it appears that the seizures herein complained of were made by the defendants under and pursu-ant to such search and seizure warrants.

In the recent case of Adams Express Company v. Kentucky, 214 U. S. 218, 29 Sup. Ct. 633, 53 L. Ed. 972, Mr. Justice Brewer, reviewing the authorities, has tersely stated the law as to a number of questions relating to interstate commerce in liquors which that court has had occasion to consider. He says:

"Liquor, however obnoxious and hurtful it may be in the judgment of many, is a recognized article of commerce. Equally well established is the proposition that the right to send liquors from one state into another, and the act of sending the same, is interstate commerce, the regulation whereof has been committed by the Constitution of the United States to Congress, and hence that a state law which denies such a right, or substantially interferes with or hampers the same, is in conflict with the Constitution of the United States. That the transportation is not complete until delivery to the con-signee is also settled. In Rhodes v. Iowa, 170 U. S. 412 [18 Sup. Ct. 664, 42 L. Ed. 1088], it was held that the Wilson act was not intended to and did not cause the power of the state to attach to an interstate commerce shipment

whilst the merchandise was in transit under such shipment, and until its arrival at the point of destination and delivery there to the consignee."

The statute of Kentucky Justice Brewer was then considering is as follows:

"Any person who shall lend, give, procure for, or furnish spirituous, vinous, or malt liquors, or any mixture of either, knowingly, to a person who is an inebriate or in the habit of becoming intoxicated or drunk by the use of any such liquors, or who shall suffer or permit any such person to drink any such liquors in his barroom, saloon, or upon the premises under his control, or in his possession, shall be fined for each offense fifty dollars. * * *"

One Tharp, a resident of Kentucky, bought and paid for liquor from liquor dealers in Tennessee and Indiana, and had the same shipped to himself in Kentucky, via Adams Express Company's line. Tharp was in the habit of becoming intoxicated, and the agent of the express company knew this fact when he delivered the liquors. The company was indicted and convicted under the statute, and appealed the case to the Supreme Court. Regarding the statute, Justice Brewer says:

"This legislation is in the exercise of the police power, which, generally speaking, belongs to the state, and is an attempt in virtue of that power to directly regulate commerce, but, in case of conflict between the powers claimed by the state and those which belong exclusively to Congress, the former must yield, for the Constitution of the United States and the laws made in pursuance thereto are the supreme law of the land. Section 5258 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3564] provide: 'Every railroad company within the United States is hereby authorized to carry upon and over its road all passengers, freight, and property on their way from any state to another state, and to receive compensation therefor.' * * * In Atlantic Coast Line Railroad Company v. Wharton, 207 U. S. 328 [28 Sup. Ct. 121, 52 L. Ed. 230], it was declared that any exercise of state authority, in whatever form manifested, which directly regulates interstate commerce, is repugnant to the commerce clause of the Constitution. In Adams Express Company v. Kentucky, 206 U. S. 129 [27 Sup. Ct. 606, 51 L. Ed. 987], 'the testimony showed that a package containing a gallon of whiskey was shipped from Cincinnati, Ohio, to George Meece, at East Bernstadt, Kentucky. The transportation was therefore one of interstate commerce, and within the exclusive jurisdiction of Congress. The Kentucky statute is obviously an intent to regulate interstate commerce. That is hardly questioned by the Court of Appeals, and is beyond dispute by the decisions of this court.' Clearly within the cases above stated, the statute before us as applied to transportation from state to state cannot be sustained."

I have quoted at length from this decision because it covers so tersely and comprehensively the law relating to this subject. Under the facts as stipulated in this case, the shipments seized were still in the hands of the carrier, were interstate commerce, and had not become subject to the laws of the state. If it be contended that in enacting the search and seizure laws referred to the Legislature intended that they should apply to such interstate commerce, then the answer is that, to that extent, the law is invalid, because it is made to apply to a subject within the exclusive jurisdiction of Congress. If, on the other hand, it is contended that such was not the intention of the Legislature; then the state courts are exceeding the law in issuing such search and seizure warrants. They are in my judgment no protection to the officer who seeks by them to justify his acts thereunder, and to enjoin

him from executing them is not a violation of section 720 of the Revised Statutes. The authority of the state does not attach to shipments .of the character involved in this case until the delivery to the consignee. The prohibitory law is leveled at the manufacture, sale, bartering, giving away, or otherwise furnishing of liquors within the state, and under the Wilson act (Act Aug. 8, 1890, c. 728, 26 Stat. 313 [U. S. Comp. St. 1901, p. 3177]) such liquors are subject to the law immediately upon delivery to the consignee, but not before.

But the defendants contend that, even though a case be presented ordinarily cognizable in a court of equity, in this instance the complainants have precluded their relief by not coming into the court with clean hands, and invoke the maxim: "He who comes into equity must come with clean hands." "This maxim expresses rather a principal of inaction than one of action. It means that equity refuses to lend its aid in any manner to one seeking its active interposition, who has been guilty of unlawful or inequitable conduct in the matter with relation to which he seeks relief." 16 Cyc. 144. With regard to cases like this, where the defendant in the suit where the maxim is invoked is in no way affected by the wrongdoing, it is said:

"But we have already seen that relief has been refused in many cases where the defendant was not concerned, either as victim or participant in plaintiff's misconduct, but where the granting of relief would permit plaintiff, sometimes very indirectly, to gain an advantage through a wrong perpetrated against a third person or against the public. The maxim itself itself affects the equitable relations between the parties wherever plaintiff's misconduct is in any way involved in the subject-matter of litigation. * * * Finally, it has been said that the maxim refers only to willful misconduct, but this can mean no more than free and deliberate action with knowledge of the facts. It does not require consciousness of the illegal or immoral nature of the act." 16 Cyc. 148.

Defendants contend that the complainants by the very allegations of their bill have brought themselves within the purview of the maxim. Complainants allege in their bill:

"That they are dealers in alcoholic liquors and have their principal offices and place of business in the city of Kansas City, state of Missouri, and that they have built up and now enjoy a lucrative business in the sale of such liquors, consisting in a large part in the sale thereof to customers residing outside of the state of Missouri, including customers in the state of Oklahoma. * * * That the details of the transactions of this character they make into the state of Oklahoma are as follows: Complainants by the use of the United States mails send out advertising matter and circulars, and receive from citizens of Oklahoma orders for alcoholic liquors to be sent to them by freight, the price to be paid after arrival of the goods."

By the act of Congress known as the "Oklahoma Enabling Act" (Act June 16, 1906, c. 3335, 34 Stat. 267), pursuant to which the state of Oklahoma was admitted into the Union, the constitutional convention was required to incorporate the following provision in the state Constitution:

"That the manufacture, sale, barter, giving away, or otherwise furnishing, except as hereinafter provided, of intoxicating liquors within those parts of said state now known as the Indian Territory and the Osage Indian Reservation, and within any other parts of said state which existed as Indian reservations on the first day of January, 1906, is prohibited for a period of twenty-

one years from the date of the admission of said state into the Union, and thereafter until the people of said state shall otherwise provide by amendment of said constitution and proper state legislation. Any person, individual or corporate, who shall manufacture, sell, barter, give away, or otherwise furnish any intoxicating liquor of any kind, including beer, ale, and wine, contrary to the provisions of this section, or who shall within the above described portion of said State, advertise for sale or solicit the purchase of any such liquors * * * shall be punished on conviction thereof, by fine not less than fifty dollars and by imprisonment not less than thirty days for each offense."

This was accordingly made a constitutional provision, and by further provision of the enabling act became immediately enforceable in the courts of the state upon its admission. The provision as incorporated in the Constitution was by vote of the people made to apply to the entire state. Thereafter, the state Legislature passed an act providing in part as follows:

"It shall be unlawful for any person, individual or corporate, to manufacture, sell, barter, give away or otherwise furnish, except as in this act provided, any spirituous, vinous, fermented, or malt liquors or any imitation thereof, or substitute therefor; or to manufacture, sell, barter, give away, or otherwise furnish any liquors or compounds of any kind or description whatsoever, whether medicated or not, which contain as much as one-half of one per centum of alcohol, measured by volume, and which is capable of being used as a beverage, except preparations compounded by any licensed pharmacist, the sale of which would not be subject to the payment of the special tax required by the laws of the United States; or to ship or in any way convey such liquor from one place within this state to another place therein, except the conveyance of a lawful purchase as herein authorized; or to solicit the purchase or sale of any such liquors, either in person or by sign, circular, letter, card, price list, advertisement, or otherwise, or to distribute, publish or display any advertisement, sign or notice where any such liquor may be manufactured, bartered, sold, given away, or otherwise furnish or to have the possession of any such liquors with the intention of violating any of the provisions of this act. A violation of any provisions of this section shall be a misdemeanor, and shall be punished by a fine of not less than fifty dollars nor more than five hundred dollars and by imprisonment for not less than thirty days nor more than six months." Snyder's Comp. Laws 1909, § 4180.

It is urged that the above provisions do not extend or apply to the sending of circulars and advertisements through the mails, and that to so apply them would be in contravention of article 1, section 8, of the United States Constitution, granting to Congress the power to establish post offices and post roads. The manifest intent of Congress in requiring the insertion of the foregoing provision in the state Constitution was to prevent so far as might lawfully be done the use of intoxicating liquors as a beverage in that portion of the new state which had formerly been Indian country, and in which, therefore, a large percentage of the citizens would be Indian. Congress had theretofore controlled the matter by direct legislation. It was conceding this control to the state, but in doing so imposed the condition that such a prohibitory provision should be made a part of the state Constitution. While it is true that it is now to be considered as a state constitutional provision, rather than an act of Congress, it is none the less the duty of the court to consider it in the light of this legislative history, and give to it all the force to which its terms entitle it, not inconsistent with the federal Constitution. The manufacture, sale,

barter, giving away, etc., referred to must take place within the state to come within the terms prescribed. The right, therefore, of a citizen of the state to purchase liquor without the state, and have it shipped into the State for his own use, was in no way affected. It placed the interstate commerce in such liquors between Oklahoma and other states on the same basis as that of other states having such prohibitory legislation since the passage of the Wilson act (26 Stat. 313). The penalty is not only imposed upon the manufacture, sale, etc., of the liquor, but also upon one who shall advertise for sale or solicit the purchase of any such liquors. The act prohibited in the latter provision is the advertising or soliciting the purchase of any intoxicating liquor, including beer, ale, or wine, within the prohibited territory; not only that manufactured and sold within the state, but, as well, that for sale in other states. This is the construction given this constitutional provision and the act of the Legislature pertaining thereto by the Supreme Court of this state (State v. State Capital Co. [Okl.] 103 Pac. 1021), and in my judgment was so intended when prescribed by Congress.

In Delamater v. South Dakota, 205 U. S. 93, 27 Sup. Ct. 447, 51 L. Ed. 724, the Supreme Court held that since the enactment of the Wilson law, which expressly provides that intoxicating liquors coming into a state, after delivery, should be as completely under the control of the state as though manufactured therein, the owner of intoxicating liquor in one state cannot, under the commerce clause of the Constitution, go himself or send his agent into another state, and, in defiance of its laws, carry on the business of soliciting proposals for the purchase of such liquors, and that, although the state may not forbid a resident therein from ordering for his own use intoxicating liquors from another state, it may forbid the carrying on within its borders of the business of soliciting orders for such liquors, although such orders may only contemplate a contract resulting from final acceptance in another state. In this Delamater Case a traveling salesman for a liquor firm in St. Paul, Minn., was soliciting orders in South Dakota from residents of that state in the nature of proposals to be accepted by that firm in Minnesota, and, when accepted, to be shipped to the purchaser in South Dakota. The law of South Dakota imposed an annual license charge upon the business of selling or offering for sale intoxicating liquors within the state by any traveling salesman who solicits orders by the jug or bottle in less than five-gallon lots. The violation of the statute was made a misdemeanor, punishable by fine or imprisonment. Delamater was arrested for violating this law, and defended on the theory that the law was in violation of the commerce clause of the Constitution. The Supreme Court held it was not in violation of the commerce clause and announced the doctrine above referred to. In this case, after referring to the case of Nutting v. Massachusetts, 183 U. S. 553, 22 Sup. Ct. 238, 46 L. Ed. 324, and other cases, wherein state statutes prohibiting the solicitation within the state of proposals for contracts of insurance to be accepted without the state by unauthorized insurance companies were held valid, the court say:

"As we have seen, the right of the states to prohibit the sale of liquor within their respective jurisdictions in and by virtue of the regulation of commerce embodied in the Wilson act is absolutely applicable to liquor shipped from one state into another, after delivery, and before the sale in the original package. It follows that the authority of the state, so far as the sale of intoxicating liquors within their borders is concerned, is just as complete as is their right to regulate within their jurisdiction the making of contracts of insurance. It hence must be that the authority of the states to forbid agents of nonresident liquor dealers from coming within their borders to solicit contracts for the purchase of intoxicating liquors, which otherwise the citizen of the state would not have thought of making, must be as complete and efficacious as is such authority in relation to contracts of insurance, especially in view of the conceptions of public order and social well-being which it may be assumed lie at the foundation of regulations concerning the traffic in liquor."

If complainants may be prohibited from soliciting sales of liquor in Oklahoma either personally or through agents, it follows that they may be prohibited from effecting such solicitation in any manner. It is none the less a solicitation of a purchase because it is done by advertisement, circular, or letter, rather than in person or by an animate agent. So that, even though we leave out of account the statute which uses the words "sign, circular, letter, card, price list, or advertisement," such acts would come within the meaning of the term "solicit." If the complainants had secured these orders through solicitation by one of their salesmen in Oklahoma, that would have been a clear violation of the law, and so connected with the subject-matter of this litigation as, in my judgment, to bring them within the maxim. If without the use of the mails they had personally come into the state and distributed the advertising matter and the circulars referred to in their bill, that would have been a violation of the constitutional provision and of the state law, and, if the orders had been thus obtained, they would not be in this court with clean hands. Does the fact that they were sent by mail from points without the state change the character of the transaction? In Zinn v. State (Ark.) 114 S. W. 227, the following state statute was involved:

"It shall be unlawful for any liquor dealer, firm, or corporation engaged in the sale of intoxicating liquors in this state to in any manner through agents, circulars, posters, or newspaper advertisements, solicit orders for such sales of intoxicating liquors in any territory of this state wherein it would be unlawful to grant a license to make such sales." Laws 1907, p. 327, § 1.

Section 2 of the act provided penalties for violation thereof. The defendant was a liquor dealer in Little Rock, Ark., where it was lawful to sell liquor. He sent, through the mail, a circular advertising his business, inclosed in an envelope addressed to J. V. Ryan, at Perry, Ark., where it was unlawful to sell liquor. He was tried and convicted for a violation of the statute, and appealed to the Supreme Court of the state. It was there said:

"The statute is a valid exercise of the police power of the state, and does not conflict in any particular with the power of Congress 'to establish post offices and post roads' and 'to designate what shall be carried by and what excluded from the United States mails.' Const. U. S. art. 1, sec. 8; Ex parte Jackson, 96 U. S. 727, 24 L. Ed. 877. The statute does not relate to that subject at all. It simply prohibited the soliciting of orders for the sale of intox-

icating liquors in territory where the sale of such liquors is prohibited. The gravamen of the offense is the soliciting of the orders for the sale. It matters not how the circular for that purpose reaches the prohibited territory, and the statute does not undertake to designate or condemn the manner by which the circulars may be carried into or excluded from the prohibited territory. It is the presence of the circulars there for the unlawful purpose of soliciting that the statute denounces and prohibits, not the method by which they may be conveyed there or distributed. Had the statute made the use of the United States mail for sending circulars into districts where the sale of intoxicating liquor is prohibited the crime, then the argument of the learned counsel for appellant would be sound. But, as such is not the case, his contention cannot be sustained."

As said by the Arkansas court, it is the presence of the circulars there for the unlawful purpose of soliciting that the statute denounces and prohibits, not the method by which they may be so conveyed there or distributed. That the complainants instead of personally distributing these circulars and advertisements make the United States mail the agent by which they do so is, in my judgment, none the less a violation of the law, if not in letter, at least in the spirit intended by Congress when it imposed the constitutional provision referred to. "Since there must always be a principal, one is such who does the criminal thing through an innocent agent while personally absent." 1 Bishop's New Criminal Law, p. 398. While the fact that complainants are not within the state may defeat the jurisdiction of the state courts to punish them for the violation of the law involved in the solicitation effected by the circulars and advertisements sent by mail into the state, they have by their acts, as confessed by their bill, done that which the laws of the state and Congress, by the enabling act, have condemned, and now ask the court to protect these shipments which are confessedly the fruit of such acts. They do not therefore come into court with clean hands, and cannot therefore invoke the aid of a court of equity.

The prayer for temporary injunction will be denied, and the restraining orders will be dissolved. It is so ordered.