## HEYMAN *v.* SOUTHERN RAILWAY COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF GEORGIA.

No. 32.   Submitted October 17, 1906.—Decided December 3, 1906.

In the absence of Congressional legislation goods moving in interstate commerce cease to be such commerce only after delivery and sale in the original package.

The word " arrival " as used in the Wilson law means delivery of the goods to the consignee, and not merely reaching their destination and expressions to that effect in *Rhodes* v. *Iowa*, 170 U. S. 412 are not *obiter.*

The power of the State over intoxicating liquors from other States in original packages after delivery and before sale given by the Wilson law does not attach before notice and expiration of a reasonable time for the consignee to receive the goods from the carrier; and this rule is not affected by the fact that under the state law the carrier's liability as such may have ceased and become that of a warehouseman.

118 Georgia, 616, reversed.

THE facts are stated in the opinion.

*Mr. Samuel H. Myers* and *Mr. Milton Strasburger* for plaintiff in error.

*Mr. Joseph B. Cumming* for defendant in error.

MR. JUSTICE WHITE delivered the opinion of the court.

In March, 1902, P. B. Wise and H. D. Harkins, residents of Charleston, South Carolina, each ordered a cask of whiskey from Paul Heyman, a wholesale liquor dealer in Augusta, Georgia. The price of the whiskey accompanied the orders, which were given upon the understanding that if for any cause delivery was not made to the consignees the purchase price would be refunded.

The two casks of whiskey, consigned to the respective purchasers at Charleston, were delivered to the Southern Railway Company at Augusta. In due course the packages of liquor reached Charleston, and were by the railroad company at once unloaded into its warehouse, ready for delivery. The record does not show that the consignees were notified of the arrival of the goods. Shortly after the goods were so placed in the warehouse of the railroad company they were seized and taken from its possession. The seizures were made without any warrant or other process, by constables asserting their right to do so under the authority of what is known as the dispensary law of South Carolina, which law was considered in *Vance* v. *Vandercook Co.*, No. 1, 170 U. S. 438. The agent of the railroad company did not resist the seizure.

Thereafter, Heyman, the consignor, sued the railroad company for failing to make the deliveries as contracted in the bills of lading, and in the Superior Court of Richmond County, on appeal from a justice's court, obtained a verdict and judgment. The case was appealed to the Supreme Court of Georgia, and by that court the judgment was reversed and the case remanded. 118 Georgia, 616. On the second trial the defendant had a verdict and judgment; and on appeal the

judgment was affirmed by the Supreme Court of Georgia upon the authority of its previous opinion. The case was then brought here.

The act of Congress of August 8, 1890, commonly known as the Wilson Act, provides that all intoxicating liquors "transported into any State or Territory, or remaining therein for use, consumption, sale or storage therein, shall, upon arrival in such State or Territory, be subject to the operation and effect of the laws of such State or Territory, enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such State or Territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise."

The Supreme Court of Georgia held—although the goods had not been delivered to the consignees and although there was no showing of notice to them from the carrier, or even if notice by the local law was unnecessary, of the lapse of a reasonable time for the consignees to call for and accept delivery—that, as the interstate transportation of the goods ended when they were placed in the warehouse, and the carrier was thenceforward liable only as a warehouseman, and that the goods ceased to be under the shelter of the interstate commerce clause of the Constitution. This was based upon the conclusion that goods warehoused under the circumstances stated must be considered as having arrived within the meaning of the Wilson Act, and therefore the packages of liquor in question were lawfully seized because subject to the police authority of the State of South Carolina. The meaning thus affixed to the word "arrival," as employed in the Wilson Act, was adopted after consideration of the opinion in *Rhodes* v. *Iowa,* 170 U. S. 412. While it was conceded by the learned court that language contained in the opinion in that case indicated that this court deemed delivery essential to constitute "arrival" within the Wilson Act, yet as the expressions in the opinion to that effect were not binding, as they were merely *obiter,* since the

*Rhodes case* was only concerned with whether goods had come
under the state authority on reaching their place of destina-
tion and before they had been warehoused by the carrier.

We cannot concur in the view taken by the learned court
of the decision in the *Rhodes case.* In that case a railroad
employé at a town in Iowa was indicted under the law of that
State because after an interstate shipment of liquors had
reached the depot of the final carrier, at the point of destina-
tion, he moved the package from the platform where it had
been placed on being unloaded to a freight warehouse belong-
ing to the railroad company, a few feet away. It was insisted
on behalf of the State of Iowa that the effect of the Wilson Act
was to confer upon that State the power to subject to state
regulations merchandise shipped from another State the
moment it reached the boundary line of the State of Iowa.
On the other hand, it was contended that an interstate ship-
ment of liquor did not arrive within that State within the
meaning of the Wilson Act until the consummation of the
shipment by delivery at its destination to the consignee. The
case, therefore, necessarily involved deciding the meaning of
the word arrival in the Wilson Act, and this required an ascer-
tainment of when goods shipped from one State to another,
generally speaking, ceased to be controlled by the interstate
commerce clause of the Constitution, and how far the general
rule resulting from the power of Congress to regulate com-
merce had been limited, if at all, by the provisions of the
Wilson Act. Considering the first question, the elementary
and long-settled doctrine was reiterated that delivery and sale
in the original package was necessary to terminate interstate
commerce, so far as the police regulations of the States were
concerned. In passing upon the second question the court,
referring to a previous case involving the Wilson law, *In re
Rahrer,* 140 U. S. 545, pointed out that the contention which
was made in that case, that the Wilson Act was repugnant
to the Constitution of the United States because it was an
abdication by Congress of its power to regulate commerce,

was held to be untenable, because the Wilson Act was simply legislation by Congress creating a uniform rule applicable to all the States, by which liquor, when the subject of interstate commerce, could come under the power of a State at an earlier date than it otherwise would have done. Contemplating the grounds of the previous ruling upholding the constitutionality of the Wilson Act and coming to precisely determine the meaning of the word "arrival," as used in that act, it was said in the *Rhodes case* (p. 426):

"Interpreting the statute by the light of all its provisions, it was not intended to and did not cause the power of the State to attach to an interstate commerce shipment, whilst the merchandise was in transit under such shipment, and until its arrival at the point of destination and delivery there to the consignee."

And as a result of this ascertainment of the meaning of the Wilson Act it was held that as the act of moving the goods preceded the period affixed by the Wilson Act at which the state power could attach, the conviction was erroneous.

The *Rhodes case* involved of necessity a construction of the import of the Wilson Act, and the mere fact that the particular conduct which happened in that case to be the subject of complaint occurred prior to the delivery did not operate to cause the affirmative construction which was given to the Wilson Act, and which it was necessary to give, to be *obiter*, and, therefore, subject to be disregarded. And a case decided by this court on the same day as the *Rhodes case* leaves no room for controversy concerning the affirmative construction given to the Wilson Act in the *Rhodes case*. The case referred to is *Vance* v. *Vandercook Co.*, No. 1, 170 U. S. 438. The court said (p. 451):

"The interstate commerce clause of the Constitution guarantees the right to ship merchandise from one State into another, and protects it until the termination of the shipment by delivery at the place of consignment, and this right is wholly unaffected by the act of Congress which allows state

authority to attach to the original package before sale but only after delivery. ` Scott *v. Donald,* and *Rhodes v. The State· of Iowa, supra.* It follows that under the Constitution of the United States every resident of South Carolina is free to receive for his own use liquor from other States and that the inhibitions of a state statute do not operate to prevent liquors from other States from being shipped into such State, on the order of a resident for his use."

And in subsequent cases the construction adopted in the previous cases of the word "arrival" as employed in the Wilson Act has been reaffirmed and applied. Thus in *American Express Co. v. Iowa,* 196 U. S. 133, in reviewing the *Rhodes case* the meaning of the Wilson Act was again reiterated, the court saying (p. 142):

"The contention was that, as by the Wilson Act, the power of the State operated upon the property the moment it passed the state boundary line, therefore the State of Iowa had the right to forbid the transportation of the merchandise within the State and to punish those carrying it therein. This was not sustained. The court declined to express an opinion as to the authority of Congress, under its power to regulate commerce, to delegate to the States the right to forbid the transportation of merchandise from one State to another. It was, however, decided that the Wilson Act manifested no attempt on the part of Congress to exert such power, but was only a regulation of commerce, since it merely provided, in the case of intoxicating liquors, that such merchandise, when transported from one State to another, should lose its character as interstate commerce upon completion of delivery under the contract of interstate shipment, and before sale in the original packages."

Again, in *Foppiano v. Speed,* 199 U. S. 501, referring to the Wilson Act and its previous construction, it was declared (p. 517): ·

"This act was held to be constitutional in the case of *In re Rahrer,* 140 U. S. 545, and that by virtue of said act, state

statutes might operate upon the original packages of intoxi-
cating liquors before sale in the State. *Rhodes* v. *Iowa*, 170
U. S. 412, and *Vance* v. *W. A. Vandercook Company*, No. 1,
170 U. S. 438, held that the state statute must ·permit the
delivery of the liquors to the party to whom they were con-
signed within the State, but that, after such delivery, the
State had power to prevent the sale of the liquors, even in the
original package."

As the general principle is that goods moving in interstate
commerce cease to be such commerce only after delivery and
sale in the original package, and as the settled rule is that the
Wilson law was not an abdication of the power of Congress to
regulate interstate commerce, since that law simply affects an
incident of such commerce by allowing the State power to
attach after delivery and before sale, we are not concerned
with whether, under the law of any particular State, the lia-
bility of a railroad company as carrier ceases and becomes that
of a warehouseman on the goods reaching their ultimate
destination before notice and before the expiration of a rea-
sonable time for the consignee to receive the goods from the
carrier. For, whatever may be the divergent legal rules in the
several States concerning the precise time when the liability
of a carrier as such in respect to the carriage of goods ends,
they cannot affect the general principle as to when an inter-
state shipment ceases to be under the protection of the com-
merce clause of the Constitution, and thereby comes under the
control of the state authority.

Of course we are not called upon in this case, and do not
decide, if goods of the character referred to in the Wilson Act,
moving in interstate commerce, arrive at the point of destina-
tion and after notice and full opportunity to receive them are
designedly left in the hands of the carrier for an unreasonable
time, that such conduct on the part of the consignee might not
justify, if affirmatively alleged and proven, the holding that
goods so dealt with have come under the operation of the
Wilson Act, because constructively delivered. We say we

are not called upon to consider this question, for the reason that no facts are shown by the record justifying passing on such a proposition. And as in this case we deal only with the power of the State to enforce its police regulations against goods of the character of those enumerated in the Wilson Act, the subject of interstate commerce, before delivery, we must not be understood as in any way limiting or restricting the ruling made in *Vance* v. *Vandercook Co.*, No. 1, *supra*, upholding the right of a citizen of one State to bring from another State into the State of his residence, and keep therein, for his personal use, the merchandise referred to in the Wilson Act. In other words, as in the case at bar, delivery had not taken place when the seizures were made, and the control of the State over the goods had not attached, we are not called upon to consider whether, if the power of the State had attached by delivery, the State might not have levied upon the goods on the charge that they had not been *bona fide* brought into the State, and were not held by the consignees for their personal use, and, therefore, were not within the ruling in *Vance* v. *Vandercook Co.*, No. 1, *supra*.

The conclusion that the court below erred in declining to follow the prior rulings of this court construing the Wilson Act disposes of the entire controversy arising on the record before us, for the following reasons: In its answer filed in the trial court the railroad company substantially defended alone upon the ground that the seizure was rightful. And the Supreme Court of Georgia treated the liability of the defendant as depending solely upon the validity of the seizure. The court said:

"If they [the goods] were still in the course of interstate transportation, the seizure by the constable was not even *prima facie* legal, for the very law under which the seizure was made had, prior to such seizure, been declared by the Supreme Court of the United States to be unconstitutional in so far as it interfered with interstate commerce. *Scott* v. *Donald*, 165 U. S. 58. It, therefore, follows that if the shipment had not

been completed at the time the goods were seized, the railroad company would have no right to defend on the ground that it submitted to the superior authority, granting that such a de-. fense, if established, would relieve it from liability."

Moreover, in this court counsel in their brief on behalf of the defendant in error rely exclusively upon the correctness of the construction given to the Wilson Act by the court below, and do not urge, in the event such construction be not sustained, that it was exempt for any reason whatever from liability.

The judgment of the Supreme Court of Georgia is reversed and the case is remanded to that court for further proceedings not inconsistent with this opinion.

*Reversed.*