## ADAMS EXPRESS COMPANY *v.* KENTUCKY.

ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 331. · Argued April 17, 18, 1907.—Decided May 13, 1907.

A statute of Kentucky, making penal all shipments of liquor "to be paid for on delivery, commonly called C. O. D. shipments," and further providing that the place where the money is paid or the goods delivered shall be deemed to be the place of sale and that the carrier and his agents delivering the goods shall be jointly liable with the vendor, is as applied to shipments from one State to another an attempt to regulate interstate commerce and beyond the power of the State.

When, in a prosecution of an express company for a violation of this statute by an interstate shipment, it is averred in the indictment or stipulated by the prosecution that the shipment and delivery were made and done by the express company in the usual course of its business as a carrier, testimony that the consignee did not order the goods or that the goods were held by the agent of the company at the place of delivery for a few days to accommodate the consignee is immaterial.

On February 17, 1904, a grand jury returned into the Circuit Court of Laurel County, Kentucky, an indictment against Joe Newland and the Adams Express Company, charging that "the said Joe Newland and the Adams Express Company, the latter being a partnership engaged in and carrying on the business of a common carrier of packages, goods, wares and merchandise, by the method known as express . . . did in Laurel County, Kentucky, on the seventeenth day of February, 1904, unlawfully and willfully carry for and deliver to George Meece a parcel, package, shipment and quantity of intoxicating, spirituous, vinous and malt liquors . . . to be and which was paid for on delivery at East Bernstadt in said Laurel County, same being at the time a shipment commonly known and called C. O. D. shipments, . . . said shipment and delivery being made and done at the time by said Joe Newland and said Adams Express Company in the usual course of business of said Adams Express Company."

Subsequently the action was dismissed as to Newland, and on a plea of not guilty the case was tried before a jury and resulted in a verdict finding the company guilty and fixing the fine at sixty dollars. The instructions of the court were as follows:

"Gentlemen of the Jury: 1. If you shall believe from the evidence, beyond a reasonable doubt, that the defendant, Adams Express Company, is a copartnership, formed of persons whose names and number were unknown to the grand jury that found this indictment, and who lived out of the State of Kentucky, but are doing business in the State of Kentucky and in Laurel County, Kentucky, and under the firm name and style of 'Adams Express Company,' and that the said Adams Express Company, in this county and within twelve months next before the finding of the indictment herein, knowingly delivered to the witness, George Meece, spirituous, vinous or malt liquors in quantities of less than five gallons at the time mentioned by the witness and received the pay therefor, and that said company received any pay whatever for its service in that behalf, then you should find the defendant guilty and fix its punishment at any fine not less than $60.00 nor more than $100.00, in your discretion, according to proof.

"2. The court says to th jury that if they shall believe from the evidence, beyond a reasonable doubt, that the agent or agents of the defendant's company that accepted, received, transported or delivered the package mentioned in evidence by the witness Meece, knew, or might, by the exercise of such care as persons of ordinary prudence are accustomed to use in the ordinary transactions of life, have known the contents of the package delivered to the witness, then the defendant company is chargeable with such knowledge, and should be held to know the contents of such package."

Judgment was entered on the verdict, which was affirmed by the Court of Appeals of the State, 87 S. W. Rep. 1111, 27 Ky. Law Reporter, 1096, and from that court the case was

brought here on writ of error.  The act under which the pros-
ecution was had is subsection 4 of section 2557*b*, Kentucky
Statutes, 1903, commonly called the "C. O. D." law, which
is part of the general local option law as amended in 1902,
and which reads:

"All the shipments of spirituous, vinous or malt liquors,
to be paid for on delivery, commonly called C. O. D. shipments,
into any county, city, town, district or precinct where this act
is in force shall be unlawful and shall be deemed sales of such
liquors at the place where the money is paid or the goods
delivered; the carrier and his agents selling or delivering such
goods shall be liable jointly with the vendor thereof."

*Mr. Lawrence Maxwell, Jr.,* and *Mr. Edmund F. Trabue,*
with whom *Mr. Joseph S. Graydon* was on the brief, for plain-
tiffs in error, in this case and in No. 332 argued simultaneously
herewith:[1]

The statute makes it an offense to deliver any C. O. D.
shipment of liquor, whether ordered by the consignee or not,
and its constitutionality must be determined on that basis.

That was the very purpose of the statute.  It was passed
to meet the decision of the Court of Appeals in *James* v. *Com-
monwealth,* 102 Kentucky, 108, where it was held that if
whiskey ordered by letter is shipped from one county to
another by express C. O. D., the sale takes place in the county
in which the whiskey is delivered to the carrier, and is not a
violation of a prohibitory liquor law in force in the county
to which it is shipped.  It is wholly immaterial, therefore, un-
der the statute whether the liquor has been ordered by the
consignee or not, and the court must determine its validity
on that basis.

The court cannot amend the statute so as to limit it to
C. O. D. shipments of liquor that have not been contracted
for by the consignee.  The plaintiff in error has been indicted
and convicted under the statute as passed, and if it is repug-

---

[1] See p. 138, *post.*

nant to the Constitution of the United States the conviction is unwarranted and should be reversed. *Trade Mark Cases*, 100 U. S. 82, 98; *United States* v. *Reese*, 92 U. S. 214; *James* v. *Bowman*, 190 U. S. 127, 142; *Ills. Central R. R.* v. *McKendree*, 203 U. S. 514; *Allen* v. *Louisiana*, 103 U. S. 80; *United States* v. *Harris*, 106 U. S. 629, 641; *Poindexter* v. *Greenhow*, 114 U. S. 270, 305; *Spraigue* v. *Thompson*, 118 U. S. 90, 94; *Baldwin* v. *Franks*, 120 U. S. 678, 685; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, 565; *United States* v. *Ju Toy*, 198 U. S. 253, 262.

As to the rule strictly construing criminal statutes see *Wynehamer* v. *The People*, 13 N. Y. 378, 424, 441.

The plaintiff in error, in making and performing the contract of shipment in good faith and in the regular course of business, was engaged in interstate commerce, whether there was an antecedent contract of purchase and sale between the shipper and the consignee, or not.

The business of transporting merchandise from one State to another, and contracts by a carrier for such transportation are interstate commerce, in and of themselves. *Hanley* v. *Kansas City Southern Railway*, 187 U. S. 617, 619; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196, 203; *Wabash, St. Louis & Pacific Railway Co.* v. *Illinois*, 118 U. S. 557.

Whiskey, as the court has decided, is an article of commerce which carriers engaged in interstate traffic are bound to carry. *Leisy* v. *Hardin*, 135 U. S. 100, 110.

The transaction did not cease to be interstate commerce because the plaintiff in error, at the request of the consignee, held the whiskey at East Bernstadt for a week before delivering it. *Heyman* v. *Southern Railway Co.*, 203 U. S. 270.

As applied to interstate traffic, the statute is an unconstitutional regulation of the business, even if it be limited to cases in which the liquor has not been ordered by the consignee.

The state legislature cannot regulate the business of interstate carriers by forbidding the transportation of whiskey from another State, or by requiring them to ascertain, at their peril, whether goods offered to them for transportation in

another State have been contracted for by the consignee, and by imposing a fine if it turns out that the package contains whiskey which was not ordered. A carrier is under no such obligation at common law, and has no means of compelling the shipper to disclose his contractual relations with the consignee. *Western Union Telegraph Company* v. *Call Publishing Company*, 181 U. S. 92, 102; *Hall* v. *De Cuir*, 95 U. S. 485, 490; *Brennan* v. *Titusville*, 153 U. S. 289, 302; *Bowman* v. *C. & N. W. Ry.*, 125 U. S. 465; *Rhodes* v. *Iowa*, 170 U. S. 412.

*Mr. Napoleon B. Hays*, Attorney General of the State of Kentucky, with whom *Mr. Charles H. Morris* was on the brief, for defendant in error, in this case and in Nos. 332 and 583 argued simultaneously herewith:[1]

The state court's construction of this statute is not subject to review unless that construction presents a Federal question. The state court says that the statute in question was not intended to apply, and does not apply, to interstate commerce. *Rippey* v. *Texas*, 193 U. S. 502 (48–767).

If the State has absolute power over the subject, then it has the power to provide that the acceptance by an express company of the pay for a C. O. D. package of whiskey, which is known to be such, whether interstate commerce or intrastate commerce, shall constitute a sale at the place where the whiskey is paid for.

The power of the state legislature of Kentucky to enact this law, and to prohibit the acceptance of the pay for such packages as appears by the terms of said statute, or as it is made to read by the construction placed upon it by the Supreme Court in Kentucky, is not in conflict with the commerce clause of the Federal Constitution. *Noble* v. *Mitchell*, 164 U. S. 367; *Miller* v. *Cornwall Railroad Co.*, 168 U. S. 128; *Carstairs* v. *Cochran*, 193 U. S. 11.

The legislature has the power to determine whether or not

---

[1] See pp. 138 and 139, *post.*

the sale of whiskey is detrimental to the peace, morals and welfare of the people.

Neither the Federal Constitution nor the Fourteenth Amendment took from the States those powers of police to protect the lives, liberty and property of its citizens, and to promote their health, morals, education, peace and welfare. *Mugler* v. *Kansas*, 123 U. S. 678.

The statute in question is a legitimate exercise of the police power of the State, not inconsistent with the regulation of commerce by Congress.

The Court of Appeals of Kentucky upheld the local option statute in question upon the ground, not only because, by the construction placed on it by said court, it did not apply to interstate commerce, but because it was a legitimate exercise of the police power of the State, not inconsistent with the power of Congress to regulate interstate commerce.

This is nothing more than a trick, device and an evasion of the law by the plaintiff in error, and it knew, or could have known that it was such, by the exercise of ordinary diligence.

There comes a time when the act of transportation from one State to another ceases to be interstate commerce. The carrier cannot indefinitely hold in its warehouse the articles transported, and without notifying the consignee or consignor, thus prevent the articles mentioned in the Wilson Act from becoming subject to the laws of the State enacted in pursuance of its reserved powers for the protection of the health and welfare of its people.

When the transportation of such articles has reached its termination, and the articles have been tendered to the consignee, or they have been held for such reasonable time in the usual course of business as would permit a delivery, the act of transportation ceases to be interstate commerce; and if the common carrier then stores them and afterwards delivers them, or accepts C. O. D. charges, it is subject to the state law.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The testimony showed that the package, containing a gallon of whiskey, was shipped from Cincinnati, Ohio, to George Meece, at East Bernstadt, Kentucky. The transaction was therefore one of interstate commerce, and within the exclusive jurisdiction of Congress. The Kentucky statute is obviously an attempt to regulate such interstate commerce. This is hardly questioned by the Court of Appeals, and is beyond dispute under the decisions of this court.

In *Vance* v. *Vandercook Company* (No. 1), 170 U. S. 438, 444, Mr. Justice White, delivering the opinion of the court, said:

"Equally well established is the proposition that the right to send liquors from one State into another, and the act of sending the same, is interstate commerce, the regulation whereof has been committed by the Constitution of the United States to Congress, and, hence, that a state law' which denies such a right, or substantially interferes with or hampers the same, is in conflict with the Constitution of the United States."

In *Rhodes* v. *Iowa*, 170 U. S. 412, 426, it was held that the Wilson Act "was not intended to and did not cause the power of the State to attach to an interstate commerce shipment, whilst the merchandise was in transit under such shipment, and until its arrival at the point of destination and delivery there to the consignee."

The Court of Appeals sustained the judgment upon these facts: Meece testified that he had not ordered the whiskey; that he was not expecting any from Cincinnati, but, on going with his brother to the company's office at East Bernstadt, was told that it was there awaiting him; that he requested the agent to hold it until the succeeding Saturday, when he would come, pay for and take it away; and that on that day he did so, paying $3.85 for the whiskey, the express charges

having been prepaid at Cincinnati. The court held that, by reason of the retention of the package by the agent, the company ceased to hold it as carrier, and had become a mere bailee or warehouseman; that, therefore, the statute, as applied to the transaction, was not a regulation of commerce; and, further, that as Meece had not ordered the whiskey there was no contract for the sale of it in Cincinnati, but only by the company at East Bernstadt, in Kentucky; that while there was no testimony showing that the company's agent at Cincinnati knew that the whiskey had not been ordered by Meece, yet its agent in Kentucky was so informed, and, therefore, the company was possessed, through its agent, of knowledge that there was no interstate transaction, and with that knowledge sold the whiskey to Meece. But that the agent consented to hold the whiskey until Saturday did not destroy the character of the transaction as one of interstate commerce is settled by the recent case of *Heyman* v. *Southern Railway Company,* 203 U. S. 270. In that case whiskey had been forwarded to a party in Charleston, South Carolina, and after its arrival at Charleston was placed in the warehouse of the railroad company by its agent and there seized by constables, asserting their right so to do under the dispensary law of South Carolina. The point was made and sustained by the Supreme Court of the State of Georgia, in which State an action had been brought against the company for the value of the goods, that when the goods were placed in the warehouse the carrier was thenceforward liable only as a warehouseman. In passing upon this contention we said (p. 276):

"As the general principle is that goods moving in interstate commerce cease to be such commerce only after delivery and sale in the original package, and as the settled rule is that the Wilson law was not an abdication of the power of Congress to regulate interstate commerce, since that law simply affects an incident of such commerce by allowing the State power to attach after delivery and before sale, we are not concerned with whether, under the law of any particular State, the

liability of a railroad company as carrier ceases and becomes that of a warehouseman on the goods reaching their ultimate destination before notice and before the expiration of a reasonable time for the consignee to receive the goods from the carrier. For, whatever may be the divergent legal rules in the several States concerning the precise time when the liability of a carrier as such in respect to the carriage of goods ends, they cannot affect the general principle as to when an interstate shipment ceases to be under the protection of the commerce clause of the Constitution, and thereby comes under the control of the state authority."

With reference to the testimony as to the knowledge by the company of the fact that the whiskey had not been ordered by the consignee, it is sufficient to say that the averment in the indictment is that the express company was engaged in the business of a common carrier of packages, etc., and that the shipment and delivery were made and done in the usual course of its business. This excludes necessarily the assumption that the transaction was one of sale by the express company at East Bernstadt, and of course the company was under no obligation to offer testimony in support of that which the State admitted to be the fact.

We do not mean to intimate that an express company may not also be engaged in selling liquor in a State contrary to its laws, or that the fact that the consignee did not order a shipment might not be evidence for a jury to consider upon the question whether the company was not, in addition to its express business, also selling liquor contrary to the statutes. It is enough to hold, as we do, that under the averments of this indictment such testimony is immaterial. It is, of course, a question of fact whether a carrier is confining itself strictly to its business as a carrier, or participating in illegal sales. The consignor alone may be trying to evade the statute. He may forward the liquors in the expectation that the consignee will, when informed of their arrival, take and pay for them. So the fact that there is no previous order by the consignee

may not be conclusive of the carrier's wrongdoing, but still it is entitled to consideration in determining that question.

Much as we may sympathize with the efforts to put a stop to the sales of intoxicating liquors in defiance of the policy of a State we are not at liberty to recognize any rule which will nullify or tend to weaken the power vested by the Constitution in Congress over interstate commerce.

*The judgment of the Court of Appeals of Kentucky is reversed and the case remanded for further proceedings not inconsistent with this opinion.*

MR. JUSTICE HARLAN dissented in this case and in the two succeeding cases. See p. 141, *post.*