STATE *v.* J. W. KELLY & COMPANY.

(*Knoxville.*    September Term, 1910.)

1. **SALES OF PERSONALTY.** Contract is complete and the title passes, without delivery, as soon as the terms are agreed upon, when; otherwise where there are express conditions.

The general rule in this State, with regard to the sale of personal property, is that the sale is complete and the title passes, as soon as the parties have agreed upon the terms, and that delivery is not essential to the passing of title, where nothing remains to be done in weighing or measuring the goods in order to separate them from the mass, or to ascertain the quantity thereof and the amount due therefor; for, in such case, the title does not pass until the weighing, measuring, and separating is completed; but delivery or prepayment of the purchase price may be made express conditions, and, under such a contract, the title does not pass until delivery or payment is made. (*Post, pp.* 562, 563.)

Cases cited and approved: Shaw v. Smith, 9 Yerg., 97; Potter v. Coward, Meigs, 22; Miller v. Koger, 9 Humph., 231, 236; Williams v. Allen, 10 Hum., 337; Shaddon v. Knott, 2 Swan, 358, 361-364; Broyles v. Lowrey, 2 Sneed, 23; Williams v. Adams, 3 Sneed, 359, 363, 364; Bush v. Barfield, 1 Cold., 93, 95; Fitzpatrick v. Fain, 3 Cold., 15, 19; Bond v. Greenwald, 4 Heisk., 460, 463; Barker v. Reagan, 4 Heisk., 590; Railroad v. Ford, 11 Heisk., 388, 390; Rawls & Griffis v. Patterson, 1 Bax., 372; Harding v. Metz, 1 Tenn. Chy., 610; Goodrich v. Edmundson, 1 Tenn. Cas., 584; Spurlock v. Gill, 3 Tenn. Cas., 43, 45; Barker v. Freeland, 91 Tenn., 112, 117; Mayberry v. Mill Co., 112 Tenn., 568; Hardwick v. Can Co., 113 Tenn., 676.

2. **SAME. Same.** Order by mail and delivery to common carrier completes sale and passes title to purchaser, when.

Where goods are ordered through the mail, it is necessary to the completion of the contract that the assent or acceptance of the

State v. Kelly.

person of whom they are ordered be communicated to the person making the order, which may be done directly, or by filling the order and delivering the goods to a common carrier to be transported to the person making the order; and when it is done by delivery to the carrier, the sale is complete, and the title, as a general rule, passes upon such delivery; for, in such case, the carrier is treated as the agent of the person making the order.   (*Post, pp.* 563, 564, 565, 571.)

Cases cited and approved:   Boyd v. Mosely, 2 Swan, 661; Mills v. Bank, 9 Lea, 314, 317; Brooks v. Paper Co., 94 Tenn., 701, 710; Charles v. Carter, 96 Tenn., 607; Katzenberger v. Leedom, 103 Tenn., 150; The Venus, 8 Cranch, 253, 275; The Frances, 9 Cranch, 183; The Mary & Susan, 1 Wheat., 25; Hatch v. Standard Oil Co., 100 U. S., 124; Trounstine v. Sellers, 35 Kan., 447; Machine Co. v. Markert, 107 Iowa, 340; Main v. Tracey, 86 Ark., 27; Kelsea v. Ramsey, 55 N. J. Law, 320; State v. Rosenberger, 212 Mo., 648; Bennett v. Express Co., 83 Me., 236.

3. **INTERSTATE OR FOREIGN COMMERCE.**  Its character attaches upon delivery to a common carrier for continuous transportation to a point beyond the State.

When a commodity has been delivered to a common carrier to be transported on a continuous voyage or trip to a point beyond the limits of the State where delivered, the character of interstate or foreign commerce attaches.   (*Post, pp.* 564, 565.)

Cases cited and approved:   The Daniel Ball v. United States, 10 Wall., 557, 566; Coe v. Errol, 116 U. S., 517; Vance v. Vandercook, 170 U. S., 438, 444; Heymann v. Railroad, 203 U. S., 273; Express Co. v. Kentucky, 206 U. S., 129; General Oil Co. v. Crain, 209 U. S., 229; Koehler, Ex parte, 30 Fed. (C. C.), 30; Greene, In re, 52 Fed. (C. C.), 113; Navigation Co. v. Insurance Co., 89 Tex., 1.

4. **INTOXICATING LIQUORS.**  State may prohibit their sale within its limits, under its police power when not conflicting with the interstate or foreign commerce power of congress.

The State has the right, under its police power when not conflicting with the interstate or foreign commerce power of congress, to prohibit the sale of intoxicating liquors within its borders;

State v. Kelly.

for the independence of the police power and of the commerce power and the delimitation between them must always be recognized and observed, and when they conflict, the State's police power must yield to the commerce power of congress. (*Post, pp.* 565, 566, 575.)

Cases cited and approved: Bartemeyer v. Iowa, 18 Wall., 129; Henderson v. New York, 92 U. S., 259; Railroad v. Husen, 95. U. S., 465; Boston Beer Co. v. Massachusetts, 97 U. S., 25; Foster v. Kansas, 112 U. S., 205; Gaslight Co. v. Light Co., 115 U. S., 650; Walling v. Michigan, 116 U. S., 446; Schmidt v. Cobb, 119 U. S., 286; Smith v. Alabama, 124 U. S., 465; Kidd v. Pearson, 128 U. S., 1; Leisy v. Hardin, 135 U. S., 100; Lyng v. Michigan, 135 U. S., 161; United States v. Knight, 156 U. S., 1; Schollenberger v. Pennsylvania, 171 U. S., 18; Arkansas v. Coal Co., 183 U. S., 185, 189; Rothelmel v. Meyerle, 9 L. R. A., 366, note and cases cited.

5. SAME. Proper subjects of commerce.

The United States has recognized intoxicating liquors as proper subjects of commerce. (*Post, p.* 566.)

Cases cited and approved: Bowman v. Railroad, 125 U. S., 465; Wilkerson v. Rahrer, 140 U. S., 545; Rhodes v. Iowa, 170 U. S., 412; Vance v. Vandercook, 170 U. S., 438; Express Co. v. Iowa, 196 U. S., 133; Heymann v. Railroad, 203 U. S., 270; Express Co. v. Kentucky, 206 U. S., 129.

6. INTERSTATE COMMERCE. Sale of intoxicating liquor completed by delivery to a common carrier for continuous transportation to another State is protected as such commerce.

The sale of intoxicating liquor by the acceptance of a mail order from a person in another State, which acceptance is manifested by the delivery of the liquor to a common carrier for continuous transportation to the purchaser, which act of such delivery completed or closed the contract is not a violation of the statute (Acts 1909, ch. 1) prohibiting the sale of intoxicating liquors within four miles of a schoolhouse, because such act places the liquor under the protection of the interstate commerce clause of the federal constitution. (*Post, pp.* 565, 569-575.)

State v. Kelly.

Acts cited and construed:  Acts 1909, ch. 1.

Constitution of the United States cited and construed:    Art. 1, sec. 8, cl. 3.

Cases cited and approved:  Ober v. Smith, 78 N. C., 313; Railroad v. Barnes, 104 N. C., 25; Pruden v. Railroad, 121 N. C., 509.

Cases cited and distinguished:  Geer v. Connecticut, 161 U. S., 519; Silz v. Hesterberg, 211 U. S., 31; State v. Groves, 121 N. C., 632; Tredway v. Riley, 32 Neb., 495; Ames v. Kirby, 71 N. J. Law, 442.

7. **SAME.  The Wilson law does not apply to the sale and ship-ments of intoxicating liquors out of the State, but only to shipments into the State.**

The Wilson law (act of congress of August 8, 1890, ch. 728, 26 Stat., 313) has reference only to intoxicating liquors brought into the State, and makes them immediately subject to the laws of the State, enacted in the exercise of its police power, independent of the question of interstate commerce, and does not affect the question of a sale in one State, completed by delivery of the liquor to a common carrier there for continuous transportation to another State to the person who ordered it from such State by mail, as against the law of the State in which such sale was made, prohibiting the sale of intoxicating liquors, because such sale is within the protection of the interstate commerce clause of the federal constitution.  (*Post, pp.* 566-568.)

Acts cited and construed:  Acts 1909, ch. 1.

Cases cited and approved:  Rahrer, In re, 140 U. S., 545.

Cases cited and distinguished:  Brewing Co. v. Crewshaw, 198 U. S., 17; Foppiano v. Speed, 199 U. S., 501, 516; Delameter v. South Dakota, 205 U. S., 93; Rose v. State, 4 Ga. App., 588; State v. Publishing Co., 104 Me., 288.

State v. Kelly.

FROM HAMILTON.

Appeal from the Criminal Court of Hamilton County.
S. D. McReynolds, Judge.

Attorney-General Cates, for State.

Williams & Lancaster, Spears & Lynch, and Lewis
M. Coelman, for defendant.

Mr. Justice Neil delivered the opinion of the Court.

In the criminal court of Hamilton county, on the
10th day of February, 1910, an indictment was found
against the defendant, containing the following aver-
ments:

"That J. W. Kelly & Company, a corporation, hereto-
fore, on the 10th day of February, 1910, in the county
aforesaid, did unlawfully sell as a beverage, spiritous,
vinous, malt, alcoholic, and intoxicating liquors within
four miles of a schoolhuose where a school was kept.

"Said sale was made under the following circumstan-
ces and conditions, to wit:

"On said date the said J. W. Kelly & Company de-
livered to the Central of Georgia Railway Company, a
common carrier of freight, a package containing five
gallons of whisky for shipment to one M. F. Frame in

the State of New York, the said M. F. Frame having previously ordered said whisky and having sent the purchase price thereof to the said J. W. Kelly & Company through the United States mail from the State of New York, against the peace and dignity of the State."

A motion to quash was entered containing four grounds; but, in the view we take of the case, we need consider only the last, which reads as follows:

"Because said indictment shows on its face that the sale complained of was made by J. W. Kelly & Company in Hamilton county, Tennessee, to M. F. Frame, in the State of New York, pursuant to an order sent from said Frame, in the State of New York, to the defendant, J. W. Kelly & Company, in the State of Tennessee; hence said sale is strictly interstate commerce. And if said act hereinbefore set out should be so construed as to prohibit said interstate sale, then it is void, because in conflict with article 1, section 8, cl. 3, of the constitution of the United States, which provides:

" 'Congress shall have power . . . to regulate commerce with foreign nations, and among the several States, and among the Indian tribes.' "

The case came on for trial on the motion on the 23d day of July, before the Honerable S. D. McReynolds, Judge, etc., whereupon he sustained the motion and quashed the indictment. From this judgment the State appealed to this court, and has here assigned errors.

The prosecution is based on chapter 1, Acts 1909, the first section of which reads as follows:

"That it shall not hereafter be lawful for any person to sell or tipple intoxicating liquors, including wine, ale, and beer, as a beverage, within four miles of any schoolhouse, public or private, where a school is kept, whether the school be then in session or not, in this State, and that any one violating the privisons of this act shall be guilty of a misdemeanor and, upon conviction, shall be punished by a fine for each offense of not less than fifty dollars nor more than five hundred dollars and imprisonment for a period of not less than thirty days nor more than six months."

The general rule in this State, with regard to the sale of personal property, is that it is complete and the title passes as soon as the parties have agreed upon the terms, and that delivery is not essential to the passing of title. *Shaw* v. *Smith*, 9 Yerg., 97; *Potter* v. *Coward*, Meigs, 22; *Miller* v. *Koger*, 9 Humph, 231, 236; *Shaddon* v. *Knott*, 2 Swan, 358, 361-364, 58 Am. Dec., 63; *Broyles* v. *Lowrey*, 2 Sneed, 23; *Fitzpatrick* v. *Fain*, 3 Cold., 15, 19; *Bond* v. *Greenwald*, 4 Heisk., 460, 463; *Railroad* v. *Ford*, 11 Heisk., 388, 390; *Spurlock* v. *Gill*, 3 Tenn. Cas., 43, 45; *Mayberry* v. *Mill Co.*, 112 Tenn., 568, 85 S. W., 401; *Hardwick* v. *Can Co.*, 113 Tenn., 676, 88 S. W., 797. Of course, delivery may be made an express condition, and, under such a contract, the title does not pass until the delivery is made. *Barker* v. *Reagan*, 4 Heisk., 590; *Barker* v. *Freeland*, 91 Tenn., 112, 117, 18 S. W., 60. So, prepayment of the purchase price may be made a condition with like effect. *Harding* v. *Metz*, 1 Tenn. Ch., 610. Likewise, when the

goods are to be weighed or measured in order to separate them from a mass of similar kind, or to ascertain the quantity of goods, or amount due for them, the title does not pass until this is done.    *Williams* v. *Allen,* 10 Humph., 337, 51 Am. Dec., 709; *Williams* v. *Adams,* 3 Sneed, 359, 363, 364; *Bush* v. *Barfield,* 1 Cold., 93, 95; *Fitzpatrick* v. *Fain,* supra; *Bond* v. *Greenwald,* supra; *Rawls & Griffis* v. *Patterson,* 1 Baxt., 372; *Goodrich* v. *Edmundson,* 1 Tenn. Cas.. 584; *Mayberry* v. *Mill Co.,* supra.    But when the goods are ordered through the mail, it is necessary that the assent of the person from whom the order is made shall be communicated to the person making the order (1 Page on Contracts, sections 41, 43, 44) before the contract is complete.    This may be done directly (*Trounstine* v. *Sellers,* 35 Kan., 447, 11 Pac., 441; *McCormick Harvesting Machine Co.* v. *Markert,* 107 Iowa, 340, 78 N. W., 33; *Main* v. *Tracey,* 86 Ark., 27, 109 S. W., 1015), or it may be accomplished by filling the order and delivering the goods to a common carrier to be transported to the person making the order.    It is held in this class of cases that the title passes upon the delivery of the goods to the carrier; the carrier, in such case, being treated as the agent of the person making the order.    *Boyd* v. *Mosely,* 2 Swan, 661; *Mississippi Mills* v. *Bank,* 9 Lea, 314, 317; *Brooks* v. *Paper Co.,* 94 Tenn., 701, 710, 31 S. W., 160; *Charles* v. *Carter,* 96 Tenn., 607, 36 S. W., 396; *Katzenberger* v. *Leedom & Co.,* 103 Tenn., 150, 52 S. W., 35.    This rule is a general one.    *The Mary & Susan,* 1 Wheat, 25, 4 L. Ed., 27; *The Frances,* 9 Cranch, 183, 3 L. Ed., 698;

*Hatch* v. *Standard Oil Co.*, 100 U. S., 124, 25 L. Ed., 554; *Kelsea* v. *Ramsey & Gore Mfg. Co.*, 55 N. J. Law, 320, 26 Atl., 907, 22 L. R. A., 415, and note; *State* v. *Rosenberger*, 212 Mo., 648, 111 S. W., 509, 20 L. R. A. (N. S.), 284, 126 Am. St. Rep., 580. In fact, delivery to the vendee or his agent is necessary to effect a transfer of title under a contract of sale which contemplates the sending of the property by the vendor to the vendee. *The Venus*, 8 Cranch, 253, 275, 3 L. Ed., 553.

So, in the case stated in the indictment, the sale became complete when the goods were delivered to the Central of Georgia Railway Company, a common carrier of freight, for shipment to M. F. Frame, in the State of New York. The carrier was then charged with the transportation of the goods. *Bennett* v. *American Express Co.*, 83 Me., 236, 22 Atl., 159, 13 L. R. A., 33, 23 Am. St. Rep., 774, and note. When a commodity has been delivered to a common carrier to be transported on a continuous voyage or trip to a point beyond the limits of the State where delivered, the character of interstate of foreign commerce attaches. *Coe* v. *Errol*, 116 U. S., 517, 6 Sup. Ct., 475, 29 L. Ed., 715; *General Oil Co.* v. *Crain*, 209 U. S., 229, 28 Sup. Ct., 475, 52 L. Ed., 754; *The Daniel Ball* v. *United States*, 10 Wall., 557, 566, 19 L. Ed., 999; *Ex parte Koehler* (C. C.), 30 Fed., 867, 869; *In re Greene* (C. C.), 52 Fed., 113; *Houston Direct Navigation Co.* v. *Insurance Co. of North America*, 89 Tex., 1, 32 S. W., 889, 30 L. R. A., 713, 59 Am. St. Rep., 17. And compare *Adams Express Co.* v. *Kentucky*, 206 U. S., 129, 27 Sup. Ct., 606, 51 L. Ed., 987; *Vance* v. *Van-*

*dercook,* 170 U. S., 438, 444, 18 Sup. Ct., 674, 42 L. Ed., 1100; *Heymann* v. *Southern Ry. Co.,* 203 U. S., 273, 27 Sup. Ct., 104, 51 L. Ed., 178.

It thus appears that the act by which the acceptance on the part of J. W. Kelly & Co. of the offer made by M. F. Frame was manifested, and which closed the contract, placed the goods—that is, the five gallons of whisky—the subject of the contract, under the protection of the interstate commerce clause of the federal constitution, since, upon the reception of the goods by the railway company for the purpose of transportation to the foreign State, the initial step in that transportation was begun. To hold that the defendants became liable to criminal prosecution for so acting would be equivalent of holding that, although the act performed by them was of a kind sanctioned by the federal constitution, yet they were not personally entitled to protection thereunder, and this would be of itself a violation by the court of that constitution.

It is true, as insisted by the State, that it has the right to prohibit the sale of intoxicating liquors within its borders. *Kidd* v. *Pearson,* 128 U. S., 1, 9 Sup. Ct., 6, 32 L. Ed., 346; *Bartemeyer* v. *Iowa,* 18 Wall., 129, 21 L. Ed., 929; *Boston Beer Co.* v. *Massachusetts,* 97 U. S., 25, 24 L. Ed., 989; *Foster* v. *Kansas,* 112 U.. S., 205, 5 Sup. Ct., 8, 97, 28 L. Ed., 629; *Schmidt* v. *Cobb,* 119 U. S., 286, 7 Sup. Ct., 1373, 30 L. Ed., 321; note to *Rothermel* v. *Meyerle,* 9 L. R. A., 366, and cases cited; Woollen & Thornton on the Law of Intoxicating Liquors, secs. 92 to 116, and authorities cited. The right exists under the

police power, and the supreme court of the United States
has said that the independence of the police power and
of the commercial power and the delimitation between
them must always be recognized and observed. *United
States* v. *E. C. Knight Co.,* 156 U. S., 1, 15 Sup. Ct., 249,
39 L. Ed., 325. It is also said, however, that when the
State police power and the national commercial power
come into conflict, the former must yield. *Arkansas* v.
*Kansas & T. Coal Co.,* 183 U. S., 185, 189, 22 Sup. Ct.,
47, 46 L. Ed., 144. This has been frequently shown in
the decisions of that court. *Lyng* v. *Michigan,* 135 U.
S., 161, 10 Sup. Ct., 725, 34 L. Ed., 150; *Leisy* v. *Hardin,*
135 U. S., 100, 10 Sup. Ct., 681, 34 L. Ed. 128; *Schollen-
berger* v. *Pennsylvania,* 171 U. S., 18, 18 Sup. Ct., 757,
43 L. Ed., 49. The United States has recognized intoxi-
cating liquors as proper subject of commerce. *Wilker-
son* v. *Rahrer,* 140 U. S., 545, 11 Sup. Ct., 865, 35 L. Ed.,
572; *Bowman* v. *Chicago & N. W. Ry. Co.,* 125 U. S.,
465, 8 Sup. Ct., 689, 1062, 31 L. Ed., 700; *Rhodes* v.
*Iowa,* 170 U. S., 412, 18 Sup. Ct., 664, 42 L. Ed., 1088;
*American Express Co.* v. *Iowa,* 196 U. S., 133, 25 Sup.
Ct., 182, 49 L. Ed., 417; *Adams Express Co.* v. *Kentucky,*
206 U. S., 129, 27 Sup. Ct., 606, 51 L. Ed., 987; *Id.,* 206
U. S., 139, 27 Sup. Ct., 608, 51 L. Ed., 992; *Vance* v.
*Vandercook,* 170 U. S., 438, 18 Sup. Ct., 674, 42 L. Ed.,
1100; *Heymann* v. *Southern Ry. Co.,* 203 U. S., 270, 27
Sup. Ct., 104, 51 L. Ed., 178. It is impossible, therefore,
for the State to prevent such sales of this product as are
made within the protection of the interstate commerce
clause of the federal constitution. By the act of con-

State v. Kelly..

gress of August 8, 1890, known as the "Wilson Law"
(Act Aug. 8, 1890, c. 728, 26 State. 313 [U. S. Comp.
St. 1901, p. 3177]), a very large number of cases were
removed from the protection of the interstate commerce
law.   The Wilson law provides:   "That all fermented,
distilled or other intoxicating liquors or. liquids trans-
ported into any State or territory, or remaining for use,
consumption, sale or storage therein, shall upon arrival
in such State or territory, be subject to the protection
and effect of the laws of such State or territory en-
acted in the exercise of its police powers, to the same
extent and in the same manner as that, if such liquids
or liquors had been produced in such State or territory,
and shall not be exempt therefrom by reason of being
introduced therein in original packages or otherwise."
The supreme court  said, in passing upon the constitu-
tionality of this act:   "The power to regulate commerce
is solely in the general government, and it is essential-
ly a part of that regulation to prescribe the means for
governing the introduction and incorporation of articles
into and with the mass of property in the country or
State.   No reason is perceived why, if congress chooses
to provide that certain distinct subjects of interstate
commerce shall be governed by the rule which divests
them of that character at an earlier period of time than
would otherwise be the case, it is not within its com-
petency to do so."   Speaking to the effect of the Wil-
son law, the court said, in the same case:   "Congress
did not use terms of permission to the State to act, but
merely removed an impediment to the enforcement of

the State laws in respect to imported packages in their original condition, created by the absence of a specific utterance on its part.   It imparted no power to the State not then possessed, but allowed imported property to fall at once upon arrival within the local jurisdiction."   *In re. Rahrer,* 140 U. S., 545, 11 Sup. Ct., 865, 35 L. Ed., 572.   The Wilson law, however, does not touch the case presented by the special facts set forth in the indictment we have under consideration.   That act has reference only to intoxicating liquors brought into the State.   The case before us is one wherein it appears that the liquors were sent out of the State.   We have carefully examined *Pabst Brewing Co.* v. *Crenshaw* 198 U. S., 17, 25 Sup. Ct., 552, 49 L. Ed., 925; *Foppiano* v. *Speed,* 199 U. S., 501, 516, 26 Sup. Ct., 138, 50 L. Ed., 288; *Delamater* v. *South Dakota,* 205 U. S., 93, 27 Sup. Ct., 447, 51 L. Ed., 724; *R. M. Rose & Co.* v. *State,* 4 Ga. App., 588, 62 S. E., 117; *State* v. *J. P. Bass Publishing Co.,* 104 Me., 288, 71 Atl., 894, 20 L. R. A. (N. S.), 495, and other authorities to which we were referred by the learned attorney-general, but we think they fail to show that the Wilson law was intended to cover, or that it can be so construed as to cover, such a state of facts as the indictments now before us presents, and the sufficiency of which we are called upon to determine.

After a very extended and careful investigation of the case, we are unable to find any ground on which to sustain the indictment.   The act on which it is based, chapter 1 of the Acts of 1909, does not cover such a case as stated in the indictment, or if, by any construction, it

could be held to cover such a case, it would be simply inoperative that far, but would not be otherwise ineffective. The act is good, but the indictment is bad, and, on the grounds stated herein, the judgment of the trial court is affirmed.

## ON REHEARING.

MR. JUSTICE NEIL delivered the opinion of the Court.

This case was decided and an opinion handed down at a former day of the term. A very earnest petition to rehear has been filed by the learned attorney-general, in which some new authorities are cited and some additional arguments made in support of the indictment. We shall now refer to such of these as we think require special notice.

In *State* v. *Groves,* 121 N. C. 632, 28 S. E. 403, cited in the petition, the supreme court of North Carolina reached a different conclusion, upon a state of facts closely similar. The two cases differ principally in the court's view as to the point of time when the contract was complete. In *State* v. *Groves* it is said: "The order of Morris to the defendant was a proposition to buy, and the acceptance of this order constituted a contract, a sale by the defendant to Morris." In the case at bar, we placed the closing of the contract at the point when the goods were delivered to the carrier for the shipment to the party in New York. The North Carolina court placed the closing of the contract one step further back. We think, as applied to a case in which goods are ordered, this is opposed, not only to former decisions of that court (*Railroad* v. *Barnes,* 104 N. C., 25, 10 S. E., 83, 5 L. R. A., 611; *Ober* v. *Smith* 78 N. C., 313, and

note the grounds of the dissenting opinion of Rodman, J., in the latter case), but to the weight of authority elsewhere. The decisions upon this subject are referred to in our former opinion. The view taken by the North Carolina court is emphasized by its reference to *Pruden* v. *Railroad Co.*, 121 N. C., 509, 28 S. E., 349. In that case it appeared that the offer on one side was made by telegraph, and was responded to in the same way, so that there was at once a complete meeting of minds upon all the terms of the contract.

We have not overlooked the fact that in *State* v. *Groves,* supra, after the words we have quoted from that opinion, there is added: "And the delivery by the defendant of the keg of whisky to the railroad at its station for shipment to Morris was a delivery, and made Morris the owner of the whisky." This was an immaterial statement, if the contract was closed by the previous uncommunicated mental assent. The whole passage is: "The order of Morris to the defendant was a proposition to buy, and the acceptance of this order constituted a contract—a sale by the defendant to Morris. *Pruden* v. *Railroad,* at this term. And the delivery by the defendant of the keg of whisky to the railroad at its station for shipment to Morris was a delivery and made Morris the owner of the whisky. *Railroad* v. *Barnes,* 104 N. C., 25 [10 S. E., 83, 5 L. R. A., 611]. The railroad being in such cases the agent of the consignee, a delivery to the railroad was a delivery to Morris." As we construe the decision, it is that the mere acceptance of the order, the mental assent which

State v. Kelly.

was given by Groves, when he received the order consti-
tuted the contract of sale, without any communication
of that assent to the person making the order, and dis-
regarding the rule that where goods are ordered the con-
tract is not complete until the assent of the person to
whom the order is sent is communicated to the person
making the order, or until its equivalent occurs, the
delivery of the goods to the agent of the person making
the order.    If the porper construction of *State* v. *Groves*
be that the contract was not complete until the delivery
to the carrier for shipment to a foreign State, and, not-
withstanding this fact, the case did not fall within the
protection of the interstate commerce clause of the
constitution of the United States, it is against the
weight of authority, and against sound reason.    It is
said in *State* v. *Groves*: "It is the same in law as if
Morris had sent his servant to the defendant, with an
order and the money to buy a keg of whisky, and the
defendant had let the servant have the whisky; and,
if these had been the facts, it could hardly be contended
that it was not a sale, though Morris did live in South
Carolina.    And though the servant carried it over the
line into South Carolina to Morris, could it be that this
would be such an interference with interstate commerce
as to prevent the defendant from being guilty of a viola-
tion of the criminal law of North Carolina?"    In this
we think there is a failure to note the distinction be-
tween delivery to a common carrier of goods for ship-
ment to another State, on order, and delivery of goods
to a private agent sent to purchase them.    The differ-

ence is vital, because, when delivery is made to a common carrier for shipment to a foreign State, in response to an order for the goods, when no other means are taken to inform the buyer that his order has been accepted, not only is the making of the contract just at that moment completed by the delivery to the agent of the buyer, the carrier, but by the same act the interstate journey is begun, and the transaction falls immediately under the protection of the interstate commerce clause.

*Tredway* v. *Riley*, 32 Neb., 495, 49 N. W., 268, 29 Am. St. Rep., 447, is not in point. In that case it appeard the Franz Brewing Company, doing business in Iowa, sold to one Riley, who was a retail liquor dealer in the town of Jackson, State of Nebraska, where it was lawful to sell, a lot of beer at the price of $826.15, and afterwards transferred the account to one Tredway, who instituted suit against Riley for the amount of the account, in the State of Nebraska. The plaintiff admitted in his pleadings that "said purchase was made in the State of Iowa." The plaintiff further stated his case: "That the sale of beer made to defendant was made for the purpose and with the intention and understanding that the same was to be shipped to said defendant at his place of business in Jackson, as aforesaid, and there to be retailed by defendant in said saloon, and under and by authority of his license to vend and retail the same in said town of Jackson and State of Nebraska." There was a statute in Iowa that " no person shall manufacture or sell . . . directly or indirectly, any intox-

State v. Kelly.

icating liquors, except as hereinafter provided"—the exceptions referring to liquors sold for medical, culinary, or sacramental purposes. The defense made was that the sale did not fall within any of the exceptions, hence was in violation of the statute of Iowa, and that the courts of Nebraska would not enforce a contract void by the law of the State where it was made. Upon the case so made, the court said:

"The Iowa statute does not undertake to prevent the transportation of intoxicating liquors from that to any other State, nor to prohibit their sale out of the State. The sale of liquors was not forbidden by reason of their transportation or intended transportation, but the same restriction is placed by the legislature upon the sale of all liquors within the State. No regulation of commerce between the States is attempted. Had such been the case the State would have been powerless to have forbidden their sale while in the original packages. The fact that it was the intention of the defendant to ship the liquors to this State is quite immaterial. *Such intention and purpose could not alone have the effect to make the liquors interstate commerce. They did not become so until received by the carrier for shipment.* Until then they were under State jurisdiction and control. The supreme court of the United States, in the case of *The Daniel Ball,* 10 Wall., 565 [19 L. Ed., 999], properly said: 'Whenever a commodity has begun to move as an article of trade from one State to another, commerce in that commodity between the States has commenced.' "

The words which we have italicized indicate the vital difference between the Nebraska case and the case now before us. In the former case it appeared that there was a complete contract made between the seller and the buyer before there was any delivery to the carrier, and it does not appear in the facts of that case who made the delivery to the carrier, or when it was made. The plaintiff, suing on the contract, predicated no rights upon such delivery, but simply upon the fact that the goods had been bought for the purpose of transportation to a foreign State, the State of Nebraska. In the instant case, however, the contract became complete only upon delivery of the goods to the carrier for shipment to the foreign State; that is, the act completing the contract was an act of interstate commerce, and placed the goods under the protection of the federal constitution. The Nebraska case concedes the principle on which the present case is rested.

*Ames v. Kirby*, 71 N. J. Law, 442, 59 Atl., 558, is not in point. In that case the party was held under arrest for keeping a gaming house. It is true the form of gambling was the transmission of bets by telegraph to a foreign State; but as the court said, the injury to the morals of the community was the same as if the gambling had been done by any other means, consisting, as it did, in the congregating of persons at a place for the purpose of gaming. No question arose, or was considered, upon the delivery or transmission of any special telegram.

State v. Kelly.

We are referred to *Geer* v. *Connecticut,* 161 U. S., 519, 16 Sup. Ct., 600, 40 L. Ed., 793, and *Silz* v. *Hesterberg,* 211 U. S., 31, 29 Sup. Ct., 10, 53 L. Ed., 75, as throwing light upon the present controversy. These are cases concerning the sale of game, and rest on quite a different principle, which is to the effect that game belongs to the State, and cannot be made a subject of commerce except with its consent.

It is again insisted, as on the former hearing, that the indictment should be sustained under the police power. This court has always upheld the police power of the State with a strong hand; but we cannot accomplish the impossible task of making that power operative in the face of the constitution and laws of the United States. The rule is indubitable, and the fact insurmountable, that the States, when providing by legislation for the protection of the public health, the public morals, or the public safety, are subject to the paramount authority of the constitution of the United States, and cannot violate rights secured or guaranteed by that instrument, or interfere with the execution of the powers confided to the general government. *Henderson* v. *Mayor of New York,* 92 U. S., 259, 23 L. Ed., 543; *Hannibal & St. J. R. R. Co.* v. *Husen,* 95 U. S., 465, 24 L. Ed., 527; *New Orleans Gaslight Co.* v. *Lousiana Light Co.,* 115 U. S., 650, 6 Sup. Ct., 252, 29 L. Ed., 516; *Walling* v. *Michigan,* 116 U. S., 446, 6 Sup. Ct., 454, 29 L. Ed., 691; *Smith* v. *Alabama,* 124 U. S., 465, 8 Sup. Ct., 564, 31 L. Ed., 508.

State v. Kelly.

It is urged that frauds will be perpetrated by pretended shipments, from points near the State line, to adjoining foreign States, for immediate reshipment into Tennessee, thereby enabling Tennessee dealers to sell to Tennessee consumers, thus largely nullifying our prohibition statutes. Certainly a fraud on the constitution cannot claim protection under it; nor can the fact that frauds may be perpetrated under the law justify us in refusing to declare the law as we understand it. Moreover, the legislature has the power to prevent, by statute, the storing or keeping of intoxicating liquors in the State for purposes of illegal sale, and the illegal business anticipated may thereby be wholly broken up.

In conclusion, while this court holds in highest esteem the ability, integrity, and faithfulness of our distinguished attorney-general, and believes that no officer in any department of the State government has ever served the State with more zeal or efficiency, and while we appreciate the earnestness and fidelity with which he has presented the State's contentions in the present case, we cannot yield to those contentions, and after full consideration of every point urged in the petition we remain unshaken in our conviction of the soundness of the views expressed in our former opinion.