# ABRAM ROSENBERGER v. PACIFIC EXPRESS COMPANY, Appellant.

### In Banc, May 20, 1914.

1. **CONTRACT: Annulled by Law Making Performance Illegal.** Where a party agrees to perform an act lawful at the time the contract is made, and thereafter the Legislature enacts a valid law making the performance of that act illegal, the contract of performance is thereby annulled.   But that rule applies only to contracts and statutes relating to matters embraced within the police powers of the State.

2. ————: **Interstate Commerce: C. O. D. Shipment.** The duty of a common carrier to receive, transport and deliver articles of commerce is imposed by law, subject, of course, to reasonable limitations and regulations, and not by contract; and for the

performance of that duty, it is entitled to charge a reasonable sum. But the C. O. D. feature of a shipment is regulated by contract, and the carrier is under no legal obligation, in the absence of some statute, to collect the purchase price of the goods carried, unless he contracts to do so. For the collection and return of the purchase price he may charge and collect a sum in addition to the carriage charges, and may hold the goods a reasonable time after they have reached their destination before delivering them to the consignee (unless a different time is named in the contract); but neither the withholding or storage of the goods until the consignee pays for them nor the collection of the purchase price has anything to do with either state or interstate commerce, and no valid statute of the State in which the consignee resides, making a C. O. D. delivery illegal, can interfere with or stifle interstate commerce. The storage of the goods and the collection of the purchase price are governed by the laws of the State in which they are made.

3. ———: ———: ———: Interstate C. O. D. Shipment of Liquor: Prohibited By Law of State: Conversion. A law of Texas, enacted after a C. O. D. contract of shipment of liquor to a consignee in that State was accepted in Missouri, but effective before the delivery of the goods to the consignee, which imposed an occupation tax of $5000 a year on all persons or corporations "handling liquors C. O. D." at each place maintained for that purpose, was a valid police regulation, and a legal excuse for the common carrier's refusal to deliver the liquors and collect the purchase price thereof, and for such refusal the carrier is not liable as for a conversion of the liquors—the shipment having been made to the point of destination, and the only breach of duty being a breach of the C. O. D. contract to deliver the liquor and collect the purchase price.

4. ———: Interstate C. O. D. Shipment of Liquor: Breach: Conversion: Damages. Where an express company, after a statute of the State of Texas making illegal a C. O. D. shipment of liquor to any place in that State was effective, but enacted prior to but not in force when the C. O. D. contract for the shipment of the liquor was made, offered to return the liquors to the consignor upon the payment of the return carriage charges, and still holds the liquors and so offers to return them, it is not liable as for conversion, but, if at all, only for damages for a breach of the C. O. D. contract.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell*, Judge.

REVERSED.

*Lathrop, Morrow, Fox & Moore, Cyrus Crane* and *Watson, Watson & Alford* for appellant.

(1) There was no common law duty or obligation enjoined by law upon defendants to carry plaintiff's liquors on the C. O. D. plan. McNichols v. Express Co., 12 Mo. App. 401; Fowler Com. Co. v. Railroad, 98 Mo. App. 210; Danciger v. Express Co., 154 Fed. 379. (2) The act of the Texas legislature, passed February 12, 1907, completely released defendants from their obligations to perform the C. O. D. contract, inasmuch as performance was rendered impossible by that act. Sauner v. Phoenix Ins. Co., 41 Mo. App. 480; 9 Cyc. Law & Proc. 630; Church v. New York, 5 Cow. (N. Y.) 538; Cordes v. Miller, 39 Mich. 584; Stone v. Mississippi, 101 U. S. 814; Am. Merc. Exchange v. Blunt, 66 Atl. 212; School Dist. v. Howard, 98 N. W. 666; Wood v. Association, 102 N. W. 412; 2 Parsons on Contracts, p. 674; Hammon on Contracts, sec. 210, p. 345-346; Craddock v. Wells-Fargo, 125 S. W. 59; Heart v. Brewing Co., 113 S. W. 364. (3) The Texas statute is a constitutional and valid enactment. Craddock v. Wells Fargo, 125 S. W. 59. In this case the very act under consideration is held to be valid as a police regulation. Texas has repeatedly held that such restrictions, prohibitions or burdens imposed upon the liquor traffic are constitutional and valid. Railway Co. v. State, 79 Tex. 269; Higgins v. Rinker, 47 Tex. 401. (4) This Texas act was a complete defense. The trial court erred in not giving full faith and credit to this valid enactment of a sister state. In so doing, the court violated section 1, article 4, of the Constitution of the United States. (5) Defendants were not obliged to first test out the constitutionality of this act, but had a right to treat it as valid and comply with its provisions and refuse to carry out the C. O. D. contracts, and in thus acting they will be protected by the courts. State v. Doug-

lass, 50 Mo. 597; Craddock v. Wells Fargo, 125 S. W. 59; McAlister v. Railroad, 74 Mo. 363; Railroad v. Goke, 51 Ind. 183; Railway v. Heyman, 45 S. E. (Ga.) 491. This rule has been repeatedly announced and followed in Texas where this controversy arose. Sessums v. Boggs, 34 Tex. 348; Boggs v. Howard, 40 Tex. 157; Black v. Epperson, 40 Tex. 185; Donaldson v. State, 15 Tex. App. 28. The presumption was that the act was constitutional until the contrary was made to appear. State v. Railway, 48 Mo. 468; Phillips v. Railroad, 86 Mo. 540; Railway v. Shambaugh, 106 Mo. 557; State ex rel. v. Wofford, 121 Mo. 61. (6) The plaintiff abandoned the property in Texas. There was no conversion because the express company returned the property to the point of origin of the shipment. The law prohibited defendants from "throwing off," remitting or rebating the return charges. Craddock v. Wells Fargo, 125 S. W. 59; Interstate Commerce Act and Hepburn Act amending same, section 2 (3 Fed. Statutes, Annotated, page 813, 34 St. at Large, 379). (7) Inasmuch as the C. O. D. feature of the shipments was no part of the carrier's common law duties, but rested solely in contract, conversion would not be, under any circumstances, the proper remedy for plaintiff to pursue. Nanson v. Jacob, 93 Mo. 331; Shewalter v. Railroad, 84 Mo. App. 599; Niemetx v. Association, 5 Mo. App. 63; Fowler Com. Co. v. Railway, 98 Mo. App. 210; Wernick v. Railroad, 131 Mo. App. 37; Hutchison on Carriers, sec. 774.

*A. F. Smith* and *Rozzelle, Vineyard & Thacher* for respondent; *Frank A. Boys* of counsel.

(1) The refusal of the defendants to deliver the goods in accordance with the terms of the contract was a conversion thereof; the Texas statute by virtue of which defendants attempt to excuse their refusal to deliver such goods as ordered, was invalid and there-

fore was no justification of such refusal. The goods
in question were articles of interstate commerce.
Express Co. v. Kentucky, 206 U. S. 129; Express Co.
v. Iowa, 196 U. S. 133; Heyman v. Express Co., 203
U. S. 270; Caldwell v. North Carolina, 187 U. S. 621.
The Texas statute was an attempt to lay a burden on
such interstate commerce, and was, therefore, in con-
travention of section 8, article 1 of the United States.
An unconstitutional law is no law.  26 Am. & Eng.
Ency. Law, 571; Marbury v. Madison, 1 Cranch, 137;
Norton v. Shelby County, 118 U. S. 263; Poindexter v.
Greenhow, 114 U. S. 270; Express Co. v. Rose, 124
Ga. 581; Crutcher v. Kentucky, 141 U. S. 47; Allen
v. Pullman Co., 191 U. S. 171.  (2) Even if it should
be held that the Texas statute is valid, the plaintiff
is entitled to recover in this case, because that statute
cannot reasonably be held to apply to the goods in con-
troversy.  The Texas statute, if applicable only to
intra-state shipments, might be valid; if intended to
be applicable to interstate shipments, it would cer-
tainly be void; if intended to be applicable to obliga-
tions thereafter incurred it might be valid; if intended
to be applicable to contracts made it would be void.
It is therefore presumed to have application only to
intra-state shipments, and to obligations arising after
the passage of the act.  Osborn v. Florida, 33 Fla.
162, 164 U. S. 650; Kehrer v. Stewart, 117 Ga. 969, 197
U. S. 60.  (3) Inasmuch as the Texas statute did not
make delivery upon payment of the purchase price
unlawful, but merely required a license therefor, such
statute, even if applicable to the shipments in ques-
tion, would not justify defendants in breaching their
contracts.  The Texas act did not purport to make de-
livery upon payment unlawful.  It provided: "Any
person, firm or corporation doing business in this state
shall, at each office or place kept, operated or main-
tained by such person, firm or corporation, at which
intoxicating liquors legally deliverable are delivered

upon payment of purchase money therefor,'' take out a license. This act does not make delivery of C. O. D. liquor shipments within the state unlawful. It expressly recognizes that such liquor may be "legally deliverable.'' A change in the law, making performance of a contract merely more difficult, does not excuse a breach of the contract. 9 Cyc. 629, 631. A subsequent impossibility in performing a contract, caused by the passage of a foreign law, is no excuse. Trading Co. v. McDonald Co., 114 Fed. 985; Rosenbaum v. Credit System Co., 64 N. J. L. 34. (4) Defendants' acts amounted to a conversion. Grain Co. v. Railroad, 176 Mo. 480; Bank v. Railroad, 135 Mo. App. 74. Defendant's return of the goods to Kansas City, without plaintiff's consent, was a conversion. The return of the goods to Kansas City without plaintiff's consent, and defendant's refusal to deliver the goods to plaintiff, except upon condition that he pay the full return charges, constituted a conversion. 6 Cyc. 494; 5 Am. & Eng. Ency. Law (2 Ed.), 232; Loeffler v. Packet Co., 7 Mo. App. 185; Miami Co. v. Railroad, 38 S. C. 78; Davis v. Railroad, 4 Jur. N. S. 1303; Rice v. Railroad, 3 Mo. App. 27.

WOODSON, J.—This is a suit in conversion. The facts are undisputed and are briefly as follows:

The plaintiff, at all the times hereinafter mentioned, was a wholesale liquor dealer in Kansas City, Missouri, transacting business in the ordinary manner throughout the United States; and the defendant, the Pacific Express Company, a common carrier, was during said times engaged in carrying express matters throughout the United States, and especially from the State of Missouri to the State of Texas.

That shortly prior to February 12, 1907, the plaintiff delivered to the defendant, express prepaid, certain packages of liquor to be transported by it to the former's customers in the State of Texas; the de-

livery thereof to be made on the payment of the price thereof, as will be presently stated.

On said February 12, 1907, the State of Texas duly enacted a statute imposing an occupation tax on all persons and corporations "handling liquors C. O. D." The license or tax imposed by the statute was $5,000 a year at each place maintained for that purpose.

That after the acceptance of said liquors by the defendant and prior to their delivery, said statute went into effect, and the defendant refused to deliver the packages or to collect the price thereof, and after due notice returned the same to the plaintiff at Kansas City, where they offered to deliver them to the plaintiff, upon condition that he pay the return express charges thereon. The plaintiff refused to pay said charges, and to accept said goods, and the defendant now holds the same, as it claims, for the use of the plaintiff.

The plaintiff instituted this suit in the circuit court of Jackson county against the defendant for converting said goods to its own use.

The terms and conditions of the contract of carriage and delivery to be subsequently mentioned, made and entered into by and between the plaintiff and defendant, were in writing, and expressed in a receipt to the former by the latter upon the receipt of the goods for shipment. This receipt is the ordinary one given by express companies to the consignor of goods; and paragraph six thereof, the one relating to the C. O. D. question involved in this case, reads as follows:

"If any sum of money besides the charges for transportation is to be collected from the consignee on delivery of the above described property and the same is not paid for or if in any case the consignee cannot be found, or for any other reason it cannot be delivered, the shipper agrees that this company may

return said property to him subject to the conditions of this receipt, and that he will pay all charges for transportation," etc.

By paragraph 3 of the same contract it is also provided that "defendant shall not be liable for any loss or damages by act of God, or of the enemies of government, or by the restraint of government," etc.

That after the taking effect of the Texas statute the defendant notified the plaintiff that if he would release the C. O. D. contract it would deliver the goods to the consignee; this the plaintiff refused to do, but insisted on the defendant carrying out its contract of shipment and delivery and that it deliver the packages to the consignee and collect the C. O. D. charges; which it refused to do, but upon the contrary ordered its agent to return the liquor to Kansas City, and charged the return express charges to the plaintiff as pre-. viously stated.

I.   Counsel for appellant ask for a reversal of the judgment of the circuit court for two reasons: first, because it held that the statute of Texas, mentioned, was no excuse or justification for the defendant's refusal to deliver the packages mentioned; and, second, because the undisputed evidence shows that if the defendant is liable to the plaintiff in any manner, it is for a breach of contract and not for a conversion of the goods.

We will dispose of these propositions in the order stated.

Regarding the first: It is confidently insisted by counsel that the Texas statute is a perfect bar to plaintiff's right of recovery in this case. **Interstate Commerce: C. O. D. Package: Shipment Inhibited by State Law.** This insistence is predicated upon the fact that the Court of Civil Appeals of Texas, in the case of Craddock & Co. v. Wells-Fargo Express Co., 125 S. W. 59, held said statute to be constitutional

and valid, and, therefore, under the well-known rule of law, to the effect that where one agrees to do an act lawful at the time, and subsequently thereto the Legislature passes a law making the performance of that act illegal, the contract of performance is thereby annulled. [Church v. New York, 5 Cow. 538; Cordes v. Miller, 39 Mich. 581; Stone v. Mississippi, 101 U. S. 814.] Of course this rule only applies to contracts and statutes relating to matters embraced within the police power of the State.

Counsel for plaintiff with equal confidence contend, that while the Texas statute may be valid, as a defense to intra-state shipments, like the Craddock case, supra, yet it has no application to interstate shipments, like the present case, where the liquor was shipped from one State to another. This class of cases, it is contended, is governed by the interstate commerce clause of the Constitution of the United States, and that if the Texas statute is intended to apply to shipments of this character, then it is unconstitutional and void. So, in no event, it is insisted, can that statute constitute a bar against plaintiff's right to a recovery in this case. In support of this proposition we are cited to many cases, and among others Adams Express Co. v. Kentucky, 206 U. S. 129; American Express Co. v. Iowa, 196 U. S. 133; Norfolk & Western Ry. Co. v. Sims, 191 U. S. 441; Allen v. Pullman Co., 191 U. S. 171. None of these cases involved the phase of the C. O. D. question here presented; and in approaching its consideration it should be borne in mind that the duty to receive, transport and deliver articles of commerce by a common carrier is imposed by law, subject of course to reasonable limitations and regulations, and not by contract; while the C. O. D. question, that is, the collection of the purchase price of the articles transported by the carrier at the time of their delivery to the consignee and the return of the purchase price to the consignor by the carrier, is a duty

imposed by contract, and not by law. In other words, the carrier is under no legal obligation, in the absence of some statute, to collect the purchase price of goods carried without it contracts to so do.

And a breach of the former duty by the carrier is a violation of the law of the State or of the United States, as the case may be, and the law provides a remedy for that wrong; but the breach of the latter, the contractual duty, is the violation of the contract for which the law also provides a remedy, but the two remedies are different, notwithstanding both may have been assumed by the carrier at the same time regarding the same article of commerce. And because of this two-fold duty of the carrier, it is entitled to charge a reasonable sum for transporting and delivering the goods, and an additional and separate sum to be agreed upon by the parties for the collection and return of the purchase price of the goods.

Under this view of the question, I am unable to see from what possible viewpoint it could be considered that the questions (1) of withholding the delivery of articles of commerce transported by the carrier; (2) the storage of the same until such time (not the reasonable time for their delivery) as the consignee is able and willing to pay for them; (3) and the collection of the purchase price thereof from the latter, has to do with either state or interstate commerce.

Suppose for instance, that an express company should to-day receive from me in Jefferson City, Missouri, two boxes of cigars, one to be carried to John Smith at St. Joseph, Missouri, and the other to John Jones in Austin, Texas, and that in pursuance to its ordinary legal duties the company should carry the cigars to their respective points of destination and deliver them within a reasonable time to the respective consignees, would the mere fact that the express company neglected or expressly refused to agree to do the three things before mentioned, interfere in any manner

with either State or interstate commerce? It seems to me that it would not, for the simple reason that the performance or non-performance of all three of those matters rest solely upon contract, and I know of no law that requires the express company or any other carrier to make or enter into a contract of that kind or for any other purpose.

If this is true, and it seems to me that it is unquestionably so, then how are we in this case going to escape that other well known rule, namely, that the things that are to be performed in the execution of the contract are governed by the law of the State where the contract is to be executed. I am not now speaking of interstate commerce or any of the things that are incidental to the free and untrammeled transportation and delivery of all articles of commerce. But I am speaking of all contracts affecting the use of all classes of property, whether produced in a state or shipped there from another, or from some foreign country, which, however, as I have tried to state are independent of and do not in any manner interfere with or stifle interstate commerce, as I tried to show by the supposed case previously stated.

Such a contract would have nothing whatever to do with the transportation and delivery of the cigars within a reasonable time, but would go further and obligate the express company to attach to its duty as a common carrier, to transport and deliver goods within a reasonable time, an additional obligation (not a duty in a strict sense) to retain and store the same for a period beyond the reasonable time fixed by law for that purpose and thereby and from that time, convert the carrier into a public storage company and collection agency, which would be wholly independent of its duties as a common carrier; and as clearly in violation of the law of Texas as if the goods had been shipped to John Smith, as agent of the consignor, with directions to receive the same from the

express company and store the same until the purchaser should call for and pay him the purchase price thereof.

That being unquestionably true, then why would not the storage of the goods and the collection of the purchase price be governed by the laws of the State where they were to be stored and where the money is to be collected?

Suppose again, that instead of cigars, the shipment had consisted of gasoline, gunpowder, dynamite or nitro-glycerine, would it be seriously contended that the laws of Texas would not govern their storage, after the lapse of a reasonable time for its delivery, notwithstanding the agreement of the express company that it would hold the same in its office or storehouse for thirty days, or any other time beyond a reasonable time required for its delivery? Certainly not.

Carriers of interstate commerce, the same as the consignees thereof, must obey the storage laws of the State where located, and that duty cannot be evaded by the consignor and the carrier, or any one else, entering into a contract obligating itself or himself to retain the goods beyond a reasonable time for their delivery in violation of a state law, in order that the purchaser may have time in which to pay the purchase price.

In other words, a carrier of interstate commerce is equally subject to the warehouse and storage laws of a state as are the ordinary citizens of that state engaged in the storage and warehouse business, and the mere fact that the carrier may see proper to add to its ordinary duties of a common carrier an additional contractual obligation not to deliver the goods within a reasonable time, will not exempt the carrier from the state laws governing the storage of goods, and the laws thereof governing the collection of debts.

And especially should this be, where the state law relates to the contractual delay duty of delivery of the

carrier concerning intoxicating liquors, which all courts
in Christendom hold is within itself a nuisance, and
that the liquor business is also unlawful, except where
authorized by statute. [State v. Distilling Co., 236 Mo.
219, where many of the cases, State and Federal, are
cited and considered, bearing upon that question.]

These suggestions illustrate the principle of law
I have in mind, namely, that the storage of goods after
their delivery, or after the lapse of a reasonable time
for their delivery, is a separate and independent mat-
ter from either state or interstate commerce, and is
and must be governed by the storage laws of the state
where they are located, and as a necessary sequence,
the collection of the purchase price of the goods, at
least, after the storage period has begun, is and must
be governed by the laws of the state where they are
located, and the collection is to be made.

While I believe that the Constitution of the United
States is the greatest and wisest instrument ever
written for the government of a great nation, and
especially the commerce clause thereof, of which so
much has been said and written, yet I do not believe
that its wise and useful purpose was designed for, or
should be used as a shield for the protection of de-
signing persons engaged in a business prohibited by
the laws of any state, so long as those laws do not
in any manner interfere with the transportation and
delivery of articles shipped from one state to another,
or from a foreign country. Of course, I am not con-
sidering the questions of taxation of articles of im-
portation, etc., but am trying to confine my observa-
tions to the single question in hand.

But it has been suggested: Suppose liquors
should be shipped to-day from Kansas City to Austin,
Texas, C. O. D., and the contract should be silent as
to the time of delivery, which would of course mean
a reasonable time, and within that time the goods
should be delivered and the purchase price paid to

the carrier? In answer to that suggestion I would say that no such case is before the court; but by way of *obiter* I would say that in principle there would be no difference in the two cases, for the reason that the legal duty of the carrier to ship and deliver the goods, and the contract or agreement to collect the purchase price, etc., are not so interdependent as to prohibit the Legislature from segregating the former from the latter, and enacting laws in the nature of police regulations regarding the collections.

And no fair-minded, disinterested man can read this record without reaching the conclusion that the C. O. D. contract mentioned in this case was resorted to in order to sell intoxicating liquors in the State of Texas in violation of the laws thereof; and in order to meet this evil the statute of 1907 was by the Legislature of that State enacted, and not for the purpose of interfering with state or interstate commerce.

It has been suggested that if such a statute is upheld, then the legislature of a State, under the guise of regulating the storage of property and the collection of money, might thereby interfere with and stifle interstate commerce. In answer to that suggestion, I simply refer the parties to the able, well considered and patriotic opinions in the cases of Express Company v. Kentucky, supra; American Express Co. v. Iowa, supra; and Heyman v. Southern Railway Co., 203 U. S. 270, with the added observations that the Supreme Court of the United States, in the future, as in the past, will never lend countenance to any rule, statute or judicial ruling of any State authorizing the erection of a wall of any kind against free intercourse and the transportation of persons and property from one state to another.

Believing as I do, that said statute does not in any manner operate in restraint of interstate commerce, I am clearly of the opinion that the same is a valid enactment, as was held by the Texas Civil

Court of Appeals in the case of Craddock v. Wells-Fargo Express Company, supra.

I am, therefore, of the opinion that when said statute went into effect, it was a valid police regulation and a legal excuse for the defendant's refusal to deliver the liquors and collect the purchase price thereof.

II. Regarding the second reason assigned by defendant for a reversal of the judgment, namely, that if it is liable at all to the plaintiff, it is not for a conversion of the liquor shipped, but for damages for a breach of the C. O. D. contract, as before defined, for non-delivery of the liquors and not collecting the purchase price thereof, as therein provided.

If we are correct in holding in paragraph one of this opinion that the C. O. D. contract mentioned was separate and independent of the defendant's duty as a common carrier to transport and deliver the packages within a reasonable time, then clearly, under the undisputed evidence that the defendant still has the packages and offers to return them to the plaintiff upon the payment of the express charges from Texas to Kansas City, there could be no conversion. These facts do not constitute a conversion of the liquors, but a breach of the C. O. D. contract, which took effect after the defendant's duty to the plaintiff as a common carrier had terminated.

Entertaining these views I am of the opinion that the judgment of the circuit court should be reversed; and it is so ordered.

All concur, except *Bond* and *Faris, JJ.*, who dissent.