BY THE

ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

·OCTOBER TERM, 1915.

M. O. DANCIGER and JOE DANCIGER, Partners Doing Business under the Firm Name and Style of THE HARVEST KING DISTILLING COMPANY of Dallas, Texas, Appellants, v. AMERICAN EXPRESS COMPANY, Respondent.

Kansas City Court of Appeals, October 4, 1915.

CARRIERS OF GOODS: Contracts Annulled by Law making Performance Illegal. Defendant Express Company refused to receive C. O. D. shipments of intoxicating liquor on the ground that it was no part of its common-law duty to collect and remit the purchase price of the goods. Plaintiff obtained a temporary injunction from the United States Circuit Court compelling the Express Company to receive such shipments "until the further order of the court." In obedience thereto defendant received certain C. O. D. shipments of liquor from plaintiff and agreed to carry them, without being liable for the restraints of government. The goods were carried without delay, but before they could be delivered, the state put into effect a law making delivery impossible and unlawful. The day this law went into effect the United States Court annulled its order and afterwards dismissed the plaintiff's bill. *Held*, that the passage of the law excused the carrier from performing the delivery feature of its contract. *Held*, also, that the statute did not encroach upon the power of the United States Court, nor did plaintiffs obtain any vested right to have delivery made on C. O. D. terms, by virtue of the contract made under said order. Hence, defendant is not liable for failure to deliver said liquor on C. O. D. terms.

Appeal from Jackson Circuit Court.—*Hon. Wm. O. Thomas*, Judge.

AFFIRMED.

(172)

*Harry L. Jacobs* and *Ringolsky & Friedman* for appellants.

*Ashley & Gilbert* for respondent.

TRIMBLE, J.—Plaintiffs, as partners, were engaged in the mail-order liquor business in the city of Dallas, Texas, under the name of the Harvest King Distilling Company. Their method of business was that, upon receipt through the mail of orders from individuals throughout the State of Texas, plaintiffs would ship the liquor C. O. D., which means, of course, that the purchase price of the liquor should be collected by the carrier from the consignee upon delivery.

Influenced by certain legislation of the State of Texas, enacted for the purpose of regulating and restricting the shipment of intoxicating liquor into local option districts, the Express Company adopted a rule refusing to receive, at any point in Texas, C. O. D. shipments of intoxicating liquors destined to local option points in said State by whomsoever tendered, on the ground that it was no part of its public duty as a common carrier to collect from the consignee, and remit to the consignor, the purchase price of the goods carried.

Thereupon, suit was instituted in the United States Circuit Court for the northern district of Texas against the Express Company for an injunction against said rule, and a *temporary* writ was issued commanding the company "to accept, receive and transport to any point or points within the State of Texas," where an express office was maintained, any and all C. O. D. packages of intoxicating liquors tendered to it, "until the further order of the court."

In obedience to this temporary order, and solely because of it, the Express Company abandoned its rule and received of plaintiffs 615 packages of intoxicating liquor consigned from Dallas, Texas, to various individuals throughout that State, on C. O. D. terms. Under the contract of carriage defendant was thus com-

pelled to enter into, it agreed to carry the packages to destination, hold the same for thirty days for delivery to the consignees, and, upon delivery, to collect the purchase price and remit to plaintiffs less a small charge for said service of collection and remittance.

The contract further provided that: "This company is not to be held liable for any loss or damage except as *forwarders only,* nor for any loss, damage or delay by . . . the restraints of government. . . ."

"If any sum of money besides the charges for transportation is to be collected from the consignee on delivery of the above described property and the same is not paid for, or if, in any case the consignee cannot be found, or for any other reason it cannot be delivered, the shipper agrees that this company may return said property to him subject to the conditions of this receipt, and that he will pay all charges for transportation," etc.

The Express Company carried said packages to the various points of destination, but before delivery could be effected, the Legislature of Texas enacted a statute, and put it into immediate effect, imposing on all persons and corporations carrying liquors C. O. D., an occupation tax of $5000 a year on each C. O. D. office maintained therein, and granting to the county and city, in which the office was located, the right to levy an additional $2500 a year each, making a total tax of $10,000 on every office where liquors were delivered C. O. D., and providing enormous penalties for failure to comply therewith. Under this act, for the company to engage in the C. O. D. transportation of intoxicating liquors, it would have been required to pay an occupation tax of one million three hundred and thirty thousand dollars yearly, a sum far in excess of its entire revenue from all sources in the State.

The day said law went into effect, the United States Court in the injunction suit which was still pending therein, on motion of defendant, suspended its

temporary order requiring the Express Company to "accept, receive and transport" C. O. D. liquor shipments, and dissolved the temporary injunction issued in the case; and later, upon a hearing duly had, said court refused to reinstate said temporary order or to issue an injunction commanding the company to "receive, convey and deliver" C. O. D. shipments of liquor, and thereupon dismissed said suit.

When the United States Court abrogated the temporary order under which the Express Company had been compelled by plaintiffs to accept their C. O. D. shipments, the Express Company notified plaintiffs that it could no longer make delivery of C. O. D. shipments and sought to obtain permission of plaintiffs to deliver without collecting the purchase price, but plaintiffs refused to grant this permission. The Express Company then transported the packages back to Dallas and turned them over to plaintiffs after collecting return charges thereon.

This suit is to recover damages for refusing to deliver, on C. O. D. terms, the 615 packages of liquor. The trial court rendered judgment for defendant and plaintiffs have appealed.

It must be kept constantly in mind that the defendant did not refuse to perform its common-law duty to receive, transport and deliver the packages. It only refused to deliver upon C. O. D. terms, which required the company to collect the purchase price and remit to plaintiffs. The duty to do this was not imposed by law but arose solely by virtue of private contract. [Rosenberger v. Pacific Express Co., 258 Mo. 97.] The Texas law above referred to rendered a delivery of intoxicating liquor on C. O. D. terms unlawful and excused the Express Company from performing that feature of its contract. [Craddock v. Wells-Fargo Co., 125 S. W. (Tex.) 59.] It was a valid police regulation and excused the defendant's refusal to so deliver. [Rosenberger v. Pacific Express Co., supra, l. c. 111.]

So far as the particular breach of contract relied on herein is concerned, the case is precisely in the same situation as where one contracts to do an act lawful at the time the contract is entered into, but before the act is performed the law declares that act illegal. In such case the executory features of the contract are thereby annulled. [Church v. New York, 5 Cow. 538; Cordes v. Miller, 39 Mich. 581; Stone v. Mississippi, 101 U. S. 814.]

But plaintiff says the passage of the Texas Act did not excuse delivery of the shipments on C. O. D. terms because the Legislature has no power to interfere with the courts. We have no desire to question the well-established rule that where rights have become vested and established by the final judgment of a court having jurisdiction to act, those rights are beyond the power of the Legislature to annul or destroy. But that principle is not involved here and neither is the freedom of the judiciary from encroachment on the part of the legislative branch of government.

The order made by the United States Court was not a final judgment adjudicating or fixing the rights of the parties. It was a mere temporary order in force only "until the further order of the court." [10 Ency. of Pl. and Pr., 1011.] The court had inherent power at any time to vacate or set aside its temporary order, and whatever rights plaintiff obtained under said order were subject to that inherent right. In fact, plaintiff was not entitled to have the order made or to any rights thereunder since it was a compelling of the Express Company to contract against its will in regard to matters having nothing to do with its duty as a common carrier. [Danciger Bros. v. Wells Fargo & Co., 154 Fed. 379; H. Clark & Sons, Inc. v. Southern Express Co., 203 Fed. 588.] Hence the court very properly rescinded it. And as the Express Company had been compelled to enter into contracts it did not wish to enter into, and which it was not required as a

common carrier to enter into, it had the right to contest the matter at every stage of the proceeding. And the moment the Texas Legislature enacted a law making the enforced executory contract unlawful, the Express Company had the right to call the court's attention to this fact. It did not have to violate the law and trust to the shield of the court's preliminary order, or to the little bond of $2000 given by plaintiffs when the preliminary order was obtained, or to plaintiffs supposed personal solvency, however large that may be, to indemnify it from loss by reason of violating the law. If performance subsequently became unlawful without the carrier's fault it is not required to violate the law in order to comply with its contract. [Baltimore, etc., R. Co. v. O'Donnell, 49 Ohio St. 489.]

Nor was there any clash between the United States Court and the Texas Legislature. Before the passage of the act the court, at plaintiffs' instance, compelled the Express Company to accept C. O. D. liquor shipments until further orders. But the moment the Texas act was passed, the court abrogated its order, and rightly did so, since it was one the plaintiff was never entitled to have, and, in its nature, was merely temporary and provisional. The many cases cited by plaintiff where legislative acts have not been allowed to interfere with the orders of courts made prior to the enactment of the legislation were cases in which *final* judgments had been rendered under laws then in force and rights thereunder had become fully vested.

But no vested rights were acquired by plaintiffs under the order of court in the case at bar. In the first place, the right to have the Express Company collect the purchase price of intoxicating liquors delivered within the State of Texas was a right arising solely through private contract. The right to have performance of such a contract was at all times subject to the police power of the State government to regulate, re-

192MA12

strict and forbid, since the traffic in intoxicating liquors does not stand upon the same basis as other commercial occupations, but derives its authority not from natural right but only from statutory authority. [State v. Parker Distilling Co., 236 Mo. 219, l. c. 253; Rosenberger v. Pacific Express Co., 258 Mo. 97, l. c. 109.] Hence, when plaintiff contracted in Texas with defendant to have it deliver intoxicating liquor in Texas and collect the purchase price, it made such contract subject to the right of the State to pass laws forbidding the performance thereof. And if, at any time before the fulfillment of such contract and while it yet remained executory as to any feature of it, the State forbids the doing of the unperformed act, the contract therefor is annulled. And the parties, in making their contract, seemed to have had in mind the possibility of such a contingency, for they stipulated therein that the Express Company was ''not to be held liable for any loss or damage except as forwarders only nor for any loss or damage . . . by the restraints of government, etc.'' In view of all which it is difficult to see how plaintiffs can lay claim to any vested rights by reason of the contract it succeeded, though without right, in forcing upon defendant.

In the case of Rosenberger v. Pacific Express Co., supra, the defendant voluntarily entered into the contract and yet the Supreme Court held that contract was annulled. We cannot see how plaintiffs can occupy any better position by reason of having forced a contract upon defendant against its will.

The *locus* of the contract herein as well as the place of its perforamnce were all in the State of Texas. The cause of action arose there. The suit, if brought there, would have failed under the ruling in Craddock v. Wells-Fargo Express Co., 125 S. W. 59, and our own Supreme Court has followed this case and, if possible, has extended its scope and effect.

The judgment is affirmed. All concur.