## 9071

### HARRIS v. SOUTHERN RAILWAY CO.

#### (85 S. E. 158.)

INTERSTATE COMMERCE. RULES AND REGULATIONS. CARRIERS. BAGGAGE. ARRIVAL. LIMITATION OF LIABILITY.

1. INTERSTATE COMMERCE—RULES AND REGULATIONS.—The operation of rules and regulations governing interstate commerce arises out of their approval by the Interstate Commerce Commission, and the failure of the carrier to post, does not abrogate them.

2. CARRIERS—INTERSTATE TRANSPORTATION—SCHEDULE OF RATES.—An interstate passenger is bound to take notice of the rules and regulations as to the transportation of baggage filed with and approved by the Interstate Commerce Commission.

3. CARRIERS—LOSS OF BAGGAGE.—Where a passenger's trunk was put off the train at destination in the evening and was not claimed by the

passenger until next morning, a reasonable time had not elapsed for its removal so as to change defendant's liability for its destruction by fire while in the depot from that of carrier to that of warehouseman.

4. CARRIERS—LOSS OF BAGGAGE—LIMITATION OF LIABILITY.—Where the carrier's rate schedules, approved by the Interstate Commerce Commission, provided for a limitation of liability for the loss of baggage, unless its value should be declared and excess rates paid, an interstate passenger checking a trunk without specifying its value can recover no more than the amount limited in case of its destruction.

Before WILSON, J., Edgefield, October, 1913. Conditionally affirmed.

Action by Nannie E. Harris against Southern Railway Company. From judgment for plaintiff, defendant appealed. The facts are stated in the opinion.

*Messrs. N. George Evans* and *B. L. Abney,* for appellant: *As to penalty statute of State:* 98 S. C. 63; 234 U. S. 421. *The law determines the relation existing between the plaintiff and defendant under the act to regulate commerce, and rules and regulations filed with, and approved by, the Interstate Commerce Commission:* 95 S. C. 427; 162 S. W. 73; 225 U. S. 155; 226 U. S. 491; 227 U. S. 657; *Ib.* 639; 232 U. S. 490; *Ib.* 508; 233 U. S. 173.

*Mr. B. E. Nicholson,* for respondent, *distinguishes* 233 U. S. 97; 226 U. S. 491 and 227 U. S. 639, *and relies on* 82 S. C. 479; 6 Cyc. 376; 14 Rich. 181; 2 Bailey 157; Harper's L. 468. *Liability of warehousemen:* 76 S. C. 249; 92 S. C. 101; 98 S. C. 63. *Penalty statute:* 98 S. C. 63. *Personal baggage:* 70 S. C. 337; 87 S. C. 365; 85 S. C. 291. *Irregularity in form of verdict waived:* 38 Cyc. 1877, 1904.

April 19, 1915.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

Action to recover $341.65, the value of a trunk and contents burned in the railroad baggage room at Edgefield, and $50.00 statutory penalty for deferred payment of the claim. The jury returned a verdict for the aggregate sum of $491.65. The defendant has appealed.

The plaintiff is a young lady. On 3d July, 1913, at Augusta, Georgia, she bought a ticket over the defendant's line of road to procure for herself transportation therefrom to Edgefield, South Carolina, and thereon she had checked her trunk for the same destination. She took the cars at Augusta and she arrived at Edgefield about 5 o'clock p. m. of the same day.

She went the same evening five miles into the country, which was the ultimate destination she set out to make.

She returned to Edgefield the next morning for her trunk. The depot had been destroyed by fire the night before, and with it the trunk.

The plaintiff sued the defendant both as carrier and as warehouseman.

The defendant plead that the plaintiff had failed to exercise ordinary care when she left the trunk in the depot over night, and that such negligence by her caused the loss of the trunk.

The defendant also plead "that the journey from Augusta, Georgia, to Edgefield, South Carolina, was an interstate journey and was controlled by, and subject to, the Federal act to regulate commerce and the amendments thereto, and was subject to the rules and regulations governing passenger and baggage transportation filed by the defendant, Southern Railway Company, with, and approved and published by, the Interstate Commerce Commission, and said rules and regulations relating to transportation of passengers and baggage as published were on file in the ticket office of the defendants at Augusta, Georgia, for the use of the public, and certain portions of said rules and regulations were

printed on the ticket purchased by plaintiff at Augusta, Georgia, and the plaintiff is bound by the same."

There are twenty-four exceptions; but the only question much argued at the bar was the defendant's liability as a carrier betwixt the States; and we shall consider that issue alone; the case turns upon it.

A decision involves the application of the Federal statutes to regulate commerce between the States, as construed by the final arbiter of those statutes, the Supreme Court of the Union.

The exceptions which make the issue arise on the charge of the Circuit Court; and the particular matters in the charge excepted to are these: That the Court was requested to charge, and ought to have instructed, the jury the following postulates: (1) That when the defendant company filed with the Interstate Commerce Commission a schedule of rates and rules for the transportation of passengers and baggage, and when that commission approved the same, then such rates and rules became operative and governed the case, and that it was irrelevant whether the rates and rules were posted and published at the railroad station in Augusta or not; and that it was not necessary that the plaintiff should have actual knowledge of such rates and rules.

(2) That by such rates and rules the plaintiff is limited to a recovery of $100.00 for the value of her trunk, unless she shall have declared aforetime to the defendant at Augusta a greater value than that and paid to the defendant an excess rate thereon.

(3) That by such rules and rates jewelry shouldn't be put into checked baggage.

(4) That by such rates and rules defendant was not liable for the trunk as *common carrier* when the same had *arrived* at the depot in Edgefield.

(5) That by such rules and rates the defendant had the right to limit its liability for the trunk to $100.00 unless the

plaintiff had before and so declared and paid a greater value and a higher rate.

We shall not decide all these issues; it is not necessary.

There is no pretext that the plaintiff did aught at Augusta but purchase a ticket, check a trunk and board a train in the usual fashion.    She did not declare for her trunk a greater value than one hundred dollars, and she, therefore, paid no "excess baggage."

It is not gainsaid as fact that the Interstate Commerce Commission had before this transaction approved the rates and rules of the defendant for the transportation of passengers and trunks; nor is it denied as fact that the rates and rules required the plaintiff to declare if her baggage exceeded one hundred dollars in value, and if it did, she was obliged to pay excess thereon; nor is it denied as law that by such rates and rules the plaintiff had to make the aforesaid declaration and pay the aforesaid excess in order to claim now a greater value for her trunk than one hundred dollars.    *Boston & Maine R. Co.* v. *Hooker,* 233 U. S. 97, 34 S. Ct. 526.

The Hooker case, *supra,* had not been decided when the case at bar was tried, so that the Circuit Court and the bar had no chance to know how the Court of last resort would determine such an issue.

The plaintiff, while tacitly conceding that the Hooker case is decisive of those controversies where the rates and rules are duly posted, as they were there, and where the railroad company is sued as carrier, as it was there, contends in this case that the rates and rules were not, but ought to have been, posted in Augusta, and the trunk was not in actual transit, but had arrived at its destination.

Considering in order these two suggested divergent features of the Hooker case and this case, we think the operation of the rates and rules arises out of their approval by the Interstate Commerce Commission, and that act alone

makes them the law of the case. It has been practically so held. *Kansas City So. R. Co.* v. *Carle,* 227 U. S. 639, 33 S. Ct. 391, and cases cited.

If a failure by the agent at Augusta to post the rates and rules there may abrogate an order of the Interstate Commerce Commission, for its approval amounts to an order, then the operation of that order would depend wholly upon the diligence of many local agents at many localities.

We are mindful of the possible embarrassment of the traveling public which may result from this conclusion.

A passenger boarding a train in Augusta to travel less than fifty miles to Edgefield must take notice of six printed pages of rules and regulations made up by the carrier for his government and filed at the city of Washington. Nor is the duty put upon the carrier, who made and knows the rules, to advise the passenger that such rules exist.

But the fundamental law of the land lodged in Congress the power "to regulate commerce among the several States," Congress set up the Interstate Commerce Commission and endowered it with extraordinary powers, the Supreme Court has construed the Constitution and the statutes, and we are held to its conclusions.

The next issue is whether or not the carrier's liability is altered that the trunk had reached Edgefield 3, 4 and been put off the car and into the railroad baggage room?

The plaintiff's second cause of action rests on a supposed difference of the liability arising thereout from that resting upon it while it actually carried the trunk.

The plaintiff maintains, that although under the case of Hooker (*supra*) the defendant would perhaps not have been liable to her above one hundred dollars had the trunk perished by flames in the cars while they were on the tracks en route to Edgefield, yet, after the cars reached Edgefield and the trunk was put out of them and into the baggage house, the defendant's liability was immediately changed

from that of carrier to that of warehouseman, and that such liabilities are essentially different.

In the Hooker case the Court used language which suggests such a difference. Therein the Court said: "It is to be borne in mind that the action as tried and decided in the State Court was not for negligence of the railroad company as a warehouseman for the loss of the baggage after its delivery at (the) station, but was solely upon the contract of carriage in interstate commerce."

Amongst the rules set out in the filed and posted schedule and relied upon by the plaintiff is this one: "The carrier * * * shall cease to be liable as common carrier for property transported in baggage cars when the same has arrived at destination."

That rule does not state what is the liability of a common carrier for property while being transported in baggage cars; it assumes that such liability exists and is fixed by law; it only declares that such liability shall cease when the baggage has arrived at destination.

Such liability is that of insurer of baggage; so that when the trunk was being actually carried by the cars the company insured its safety. But such insurance ceased by the rule when the trunk arrived at Edgefield, which was the destination.

Nor does the rule define what *arrival* at destination means; it assumes that the law fixed the meaning of that expression; it only declares that whenever and however arrival is accomplished, at that time and henceforth the plenary liability of insurer should cease.

The plaintiff might have said to the defendant's agent when she disembarked from the cars at Edgefield, "keep my trunk for a week, I will pay the storage charges thereon, and I will call again for the trunk." In that event, and upon compliance by the carrier, the railroad company would occupy to the plaintiff only the relationship of warehouseman, under well defined obligations, and the act of Congress

and the rules and regulations of the commission, so far as it now appears, would be beside the question.

But the instant case is not of that sort. When the trunk was ejected from the baggage car onto the ground the obligation of the carrier did not instantly cease, and the obligation of the warehouseman did not instantly set in.

It was the duty of the carrier to put off the trunk, and it was the duty of the passenger to then take the trunk; but in the nature of the case not immediately.

The passenger has a reasonable time to lay hands on, and the carrier has a like time to take hands off; and until that time transpires the trunk has not arrived, and a new relationship thereabout has not set in. *Spears* v. *R. R.,* 11 S. C. 188.

When that time has transpired, and it may be, the law will regard the situation as amounting to a *constructive* delivery. *Heyman* v. *So. Ry. Co.* 203 U. S. 276, 27 S. Ct. 104; 7 Ann. Cas. 1130.

What is a reasonable time for delivery must, in some cases, be determined by a jury. Where there is a dispute about what took place between the passenger and the carrier at the time the trunk left the cars, and, therefore, whether or not a new relationship was instituted between them, the issue of a reasonable time to deliver ought to go to a jury.

But in the case at bar there is no difference between the parties about what was said and done at Edgefield in the afternoon of the 3d of July. The lady said she arrived at Edgefield when it was "almost dusk;" that she did not then claim her trunk, and that she then said nothing to the agent about it; that she went into the country and came back to Edgefield for the trunk next morning before nine o'clock. The agent said he put the trunk in the baggage room and that nobody called for it that night, that the office closed before nine o'clock.

There is only one inference to be drawn from the testimony, and that is the reasonable time to deliver and to

claim the trunk had not elapsed; that, therefore, the trunk had not "arrived" at its destination; and that it was on the night of the fire in contemplation of law in transit from the passenger at Augusta to the passenger at Edgefield; that the railroad company was at that time its insurer; and that by the acts of Congress and the rules and rates of the Interstate Commerce Commission the liability of the carrier to the passenger was limited to one hundred dollars. *Rhodes* v. *Iowa,* 170 U. S. 412, 18 S. Ct. 664.

The other issues made by the exceptions are irrelevant.

Our conclusion is that there must be a new trial unless the plaintiff shall remit all the recovery save $100.00, and that within thirty days from the filing of this opinion. It is so ordered.